**Jack COLLIER**

v.

**GREENBRIER DEVELOPERS, LLC, et al.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Feb. 10, 2009 Session.

April 16, 2009.

Application for Permission to Appeal Denied by Supreme Court May 13, 2009.

L. Caesar Stair, III, C. Scott Taylor and Margo J. Maxwell, Knoxville, TN, for the Appellant Jack Collier.

Thomas H. Dickenson and Oliver D. Adams, Knoxville, TN, for the Appellees Greenbrier Developers, LLC,; Executive Realty Partnership, L.P.; Gerald Franklin, Trustee; and Kenneth Whaley.

## OPINION

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which HERSCHEL PICKENS FRANKS, P.J. and CHARLES D. SUSANO, JR., J., joined.

This case was filed under the Uniform Fraudulent Transfers Act, Tenn.Code Ann. § 66–3–101 *et seq.*, seeking to void four quitclaim deeds that were filed in connection with a real estate transaction. The contract for the sale of real property was originally entered by and between the Appellant, who is the sole member of an LLC, and the Appellees. Appellant then assigned his interest in the contract to the LLC. The trial court granted Appellees' Tenn. R. Civ. P. 12.02(6) motion upon its finding that Appellant was in privity with the LLC and thus bound by the transaction. We reverse and remand.

On or about October 5, 2005, Appellant Jack Collier and Greenbrier Developers, LLC, Executive Realty Partnership, L.P., Gerald Franklin, and Kenneth Whaley (together "Greenbrier," or "Appellees") entered into an agreement for the purchase and sale of five parcels of real property located in Sevier County, Tennessee. The October 5, 2005 agreement was subsequently amended twice. Although the agreement and its amendments are not included in the appellate record, it is undisputed that thereunder Mr. Collier obtained the right to purchase the real property from Greenbrier.

Mr. Collier is the sole member of Webb Mtn., a Tennessee limited liability company ("Webb"). After executing the contract for sale of real property, Mr. Collier assigned his interest to Webb.[1] On or about March 24, 2006, Webb exercised its right to purchase the real property, paying an initial installment of $27,975,000.00. Because the five parcels had various owners, the transfer of the property was accomplished by several warranty deeds. Webb financed the purchase price by executing the following promissory notes and deeds of trust:

1. A promissory note in favor of Greenbrier Developers, LLC, Kenneth Whaley, and Gerald Franklin secured by a deed of trust in the amount of $4,790,000.00. The amount due on this note, as of June 25, 2007, was $4,986,620.00.

2. A promissory note in favor of Executive Realty Partnership, LP secured by

---

1. The assignment from Mr. Collier to Webb is not included in the appellate record.

a deed of trust in the amount of $990,000.00, with an amount due of $1,021,334.67 as of June 25, 2007.

3. A promissory note in favor of Greenbrier Developers, secured by a deed of trust in the amount of $10,465,000.00, with $10,289,992.00 due as of June 25, 2007.

4. A promissory note in favor of Gerald Franklin, secured by a deed of trust for $8,980,000.00, with $8,253,841.00 due as of June 25, 2007.

5. A promissory note in favor of M & A Enterprises, Inc., secured by a deed of trust in the amount of $1,000,000.00. This note was paid in full as of December, 2006. The deed of trust was subsequently released. The real property given as security for the M & A note is not at issue in this appeal.

On or about June 23, 2006, Webb made all payments due ninety days from the date of the execution of the promissory notes, in the collective amount of $3,250,000.00. Webb also made an interest payment of $421,679.23. The remaining amounts due under the promissory notes were due and payable on January 3, 2007. When Webb failed to make the payments, Greenbrier initiated foreclosure proceedings.

Pursuant to a Conditional Extension of Borrowers' Obligations Under Promissory Notes dated March 27, 2007, the foreclosure sales were adjourned until after June 25, 2007 upon Webb's execution of four quitclaim deeds conveying the real property at issue to Greenbrier. The quitclaim deeds were signed by Mr. Collier as the sole member of Webb and were held in escrow pending Webb's payment. As of June 25, 2007, the amount due and owning under the promissory notes was $24,551,787.67. The payment was not made and, on September 18, 2007, the quitclaim deeds were recorded.

On October 26, 2007, Mr. Collier filed suit in the Chancery Court of Sevier County against Appellees under the Uniform Fraudulent Transfers Act, Tenn.Code Ann. § 66–3–101 *et seq.*, seeking to void the four quitclaim deeds. In his complaint, Mr. Collier asserts, *inter alia,* that he is a creditor of Webb based upon his loans to Webb in the amount of $6,349,289.00. In support of his argument, Mr. Collier contends that, because Webb transferred its interest in the real property for the stated consideration of $10 in each quitclaim, Webb did not receive reasonably equivalent value in exchange for the transfers and was rendered insolvent due to these transfers. Consequently, Mr. Collier asks the court to declare the transfers fraudulent under the Uniform Fraudulent Transfers Act, to void the transfers, to have the Clerk of Court certify an abstract as a notice of *liens lis pendens,* and to enjoin Appellees and all transferees against disposition of the properties pending further orders of the court.

On December 4, 2007, Greenbrier filed a motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(6). Greenbrier specifically asserts that Mr. Collier fails to state a claim upon which relief can be granted because Mr. Collier is in privity with Webb and thus bound by the transaction. Following this filing, the case was transferred to the circuit court.

On March 17, 2008, Mr. Collier filed a response to the motion to dismiss, asking the court to deny the motion on grounds that no privity exists between himself and Webb, and that Webb did not receive a reasonably equivalent value in exchange for the transfers. The motion to dismiss was heard on May 22, 2008. On June 18, 2008, the trial court entered an order, dismissing Mr. Collier's complaint upon the court's determination that Mr. Collier was in privity with Webb at the time of the

transfers, and was therefore precluded from attacking the property transfers.

Mr. Collier appeals and raises one issue for review as stated in his brief:

Did the trial court err in dismissing Plaintiff's complaint on Defendants' Tenn. R. Civ. P. 12.02(6) motion to dismiss, based on its determination that Plaintiff was in privity with Webb MTN at the time that it transferred its property to Defendants?

■ We first note that a motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. It admits the truth of all relevant and material allegations but asserts that such allegations do not constitute a cause of action as a matter of law. *See Riggs v. Burson,* 941 S.W.2d 44 (Tenn.1997). When considering a motion to dismiss for failure to state a claim upon which relief can be granted, we are limited to an examination of the complaint alone. *See Wolcotts Fin. Serv., Inc. v. McReynolds,* 807 S.W.2d 708 (Tenn.Ct.App.1990). The basis for the motion is that the allegations in the complaint, when considered alone and taken as true, are insufficient to state a claim as a matter of law. *See Cornpropst v. Sloan,* 528 S.W.2d 188 (Tenn.1975). In considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. *See Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.,* 878 S.W.2d 934 (Tenn.1994).

■ Mr. Collier brings this suit under the fraudulent transfers act, in the posture of a creditor of Webb. It is a well established rule of fraudulent transfer law that a transfer in fraud of creditors generally binds the transferor and those claiming under him or her. Equity will not relieve the transferor, or those in privity with the transferor, from the consequences of the

fraudulent act. *See, e.g., Lefmann v. Brill,* 142 F. 44, 46 (6th Cir.1905) ("A conveyance in fraud of the creditors of the grantor, or a mortgage made to hinder, delay, and defraud creditors, is good between the parties and those in privity with them."); *see also* 37 C.J.S., Fraudulent Conveyances, § 157. Consequently, although Mr. Collier, in his capacity as a creditor, has standing to bring this suit to set aside the allegedly fraudulent conveyance, if Mr. Collier also stands in privity with Webb, he will be precluded from arguing that Webb did not receive reasonably equivalent value for the transfer. The question on appeal, therefore, is whether Mr. Collier and Webb are privies. We find guidance concerning the definition of privies in our case law. In *Cotton v. Underwood,* 223 Tenn. 122, 442 S.W.2d 632 (1969), our Supreme Court stated that "privies are not only those who are so related by blood and law, but are those who are so related by reason of the facts showing an identity of interest." *Id.* at 634–35. The Court went on to explain that:

Privies [are] [p]ersons who are partakers or have an interest in any action or thing, or any relation to another.... There are several kinds of privies: namely, privies in blood, as the heir is to the ancestor; privies in representation, as is the executor or administrator to the deceased; privies in estate, as the relation between the donor and donee, lessor and lessee; privies in respect to contracts; and privies on account of estate and contract together.... Privies have also been divided into privies in fact and privies in law.... The latter are created by the law casting land upon a person, as in escheat....

*Id.* at 635, n. 1 (internal citations omitted).

In *Fultz v. Fultz,* 180 Tenn. 327, 175 S.W.2d 315 (1943), our Supreme Court noted that "[t]he term privity denotes mutual

... relationship to the same rights of property. The ground, therefore, upon which persons standing in this relation to the litigating party are bound by the proceedings to which he was a party is that they are identified with him in interest, and whenever this identity is found to exist, all are alike concluded." *Id.* at 316 (citing 24 Am. & Eng. Ency. Law, p. 746). In keeping with the definition of privies as those in mutual relationship to the same rights of property, this Court, in *Pers. Loan & Fin. Co. v. Kinnin,* 56 Tenn.App. 481, 408 S.W.2d 662 (1966), *perm. app. denied* (Tenn. Nov. 17, 1966), relied upon the Black's Law Dictionary to define privity as a "derivative interest *founded on or growing out of contract, connection or bond of union between the parties, mutuality of interest.*" *Kinnin,* 408 S.W.2d at 664 (emphasis added).

▆▆ In its brief, Greenbrier argues that, because Mr. Collier is the sole member of Webb, that fact, in and of itself, constitutes privity. We disagree. Tennessee recognizes the "presumption that a corporation is a distinct legal entity, wholly separate and apart from its shareholders, officers, directors, or affiliate corporations." *See, e.g., Boles v. National Dev. Co., Inc.,* 175 S.W.3d 226, 244 (Tenn.Ct. App.2005). This Court has warned that, because "a corporation is presumptively treated as a distinct entity," a corporations's identity should be disregarded only "with great caution and not precipitately." *Schlater v. Haynie,* 833 S.W.2d 919, 925 (Tenn.Ct.App.1991); *see also Widdicombe v. McGuire,* 221 Tenn. 601, 429 S.W.2d 815, 817–18 (1968). Likewise, "[a] limited liability company is a form of legal entity that has the attributes of both a corporation and a partnership but is not formally characterized as either one." 83 Am. Jur.2d Limited Liability Companies § 1 (footnotes omitted). Moreover, "[a] limit-

ed liability company has an existence separate from its members and managers ... [and] may only appear in court through counsel." *Id.* (footnotes omitted).

Although Tennessee Courts have not specifically addressed the issue of whether a single-member limited liability company and that member are in privity, under the former Limited Liability Company Act (the "LLC Act"), Tenn.Code Ann. § 48–201–101 *et seq.,* and the Revised Limited Liability Company Act (the "Revised LLC Act"), Tenn.Code Ann. § 48–249–101 *et seq.,* a limited liability company is empowered "as an individual to do all things necessary or convenient to carry out its business." Tenn.Code Ann. §§ 48–212–101, 48–249–104(c). Moreover, the LLC Act and the Revised LLC Act distinguish between a membership interest in the LLC and the LLC's property:

> A membership interest in an LLC is personal property. A member has no interest in specific LLC property. All property transferred to or acquired by an LLC is property of the LLC itself.

Tenn.Code Ann. §§ 48–215–101(a), 48–249–104(c).

▆▆ Under the LLC Act and the Revised LLC Act, managers and members of the LLC are empowered and authorized to execute documents and conveyances of LLC property. Tenn.Code Ann. §§ 48–238–101–104, 48–249–401–402. The protections afforded by the LLC construct are that members, managers, employees, and other agents of the LLC do not have a personal obligation and are not personally liable for the acts, debts, liabilities, or obligations of the LLC whether same arise in contract, tort, or otherwise. Tenn.Code Ann. §§ 48–217–101(a)(1), 48–249–114. Based upon this authority, the fact that Mr. Collier, as the sole member of Webb, signed the very quitclaim deed of which he now complains does not, necessarily, pre-

clude his claim. Moreover, we cannot conclude, as a matter of law, that a sole member of an LLC is, *ipso facto,* in privity with the LLC. To so hold would erode the protections afforded by the LLC construct.

■ Having determined that the relationship between Mr. Collier and Webb is not, by itself, sufficient to establish privity between them, we now consider whether Mr. Collier's assignment of his interest in the contract for the purchase and sale of real property to Webb created privity. If it does, Mr. Collier's claim under the fraudulent transfers act would be precluded. Before delving too far into this inquiry, it is helpful to review the nature and definition of an assignment. For guidance, we turn to E. Allan Farnsworth, *Contracts* § 11.3, p. 709 (3d ed.1999):

> The word *assignment* . . . refers to the act by which an assignor transfers a contract right to an assignee. Such an act will sometimes also be referred to as an *effective assignment,* as distinguished from an *attempted* or *purported assignment.* What is necessary for an effective assignment?
>
> To make an effective assignment of a contract right, the owner of that right must manifest an intention to make a present transfer of the right without further action by the owner or by the obligor. The owner may manifest this intention directly to the assignee or to a third person. No words of art are required; the assignor need not even use

the word *assign.* Whether the owner of a right has manifested an intention to transfer it is a question of interpretation to be answered from all the circumstances, including words and other conduct. To transfer a contract right is, in essence, to take from the assignor (B) and to give to the assignee (C) the right to performance by the obligor (A). Put in another way, the transfer of a contract right extinguishes the assignor's right to performance by the obligor and gives the assignee a right to that performance. It is important not to confuse an assignment, which is a present transfer, with a contract which is a promise of future performance.[2]

*Id.* (emphasis in original) (footnotes omitted).

■ Following an effective assignment, it is well settled that the assignee stands in the shoes of the assignor and has all the rights, and is subject to all the obligations, of the assignor. *See, e.g., Pers. Loan & Fin. Co. v. Kinnin,* 56 Tenn. App. 481, 408 S.W.2d 662 (1966) (citations omitted). That being said, we cannot go so far as to hold, as a matter of law, that, by virtue of the assignment alone, the assignor and the assignee stand in privity with one another. First, as noted by Professor Farnsworth "an assignment is a transfer, not a contract (a promise)." E. Allan Farnsworth, *Contracts* §§ 11.6, p. 726 (3d ed.1999). Consequently, an assignment, without more, does not create

2. Absent a statute to the contrary, no writing is necessary for an effective assignment. However, the land contract provision of the statute of frauds may require a writing if what is assigned is a right under such a contract. E. Allan Farnsworth, *Contracts* §§ 11.4 and 6.5, pps. 713 and 388 (3d ed.1999). In the instant case, we are addressing an assignment of an agreement for sale of real property. The land contract provision of the Tennessee Statute of Frauds, Tenn.Code Ann. § 29-2-

101(4), requires that any "contract for the sale of lands" be in writing. As discussed, *infra,* the assignment is not included in this record. However, under the Tenn. R. Civ. P. 12.02 standard of review, we must give an inference in favor of Mr. Collier and with Mr. Collier's statement in his Complaint that he assigned his contractual rights to Webb, we infer that this assignment was made in compliance with the statute of frauds.

privity of contract between the assignor and assignee. Second, because an assignee stands in the shoes of the assignor and obtains, through the assignment, all rights and obligations of the assignor, the assignor relinquishes all rights in the thing assigned. Moreover, "[t]he obligation to pay the purchase price [in a contract for the purchase of real property] is not a covenant running with the land." 92 C.J.S. Vendors § 472. As noted above, privity requires a mutuality of interest. Because the assignor, who assigns without reservation, relinquishes all of his or her rights to the assignee, and because the obligation to pay the purchase price under the contract is not a covenant running with the land, no privity of estate remains between the assignor and the assignee. However, there are instances where an assignor and an assignee of a contract for the sale of real property may stand in privity with one another.

In *Personal Loan & Finance Co. v. Kinnin*, 56 Tenn.App. 481, 408 S.W.2d 662 (1966), a case that is factually similar to the one at bar, this Court held that "assignors who assigned without recourse [a] furniture conditional sales contract *and who warranted that contract was bona fide and actually executed by buyers* were in privity with assignee so as to be bound by judgment which held that signature of a buyer on contract was forged, in assignee's suit against buyers." *Id.* at 491, 408 S.W.2d 662 (emphasis added). Despite Appellees' argument that *Kinnin* supports a holding that an assignment, by itself, creates privity between an assignor and assignee, we cannot overlook the fact that the assignors in *Kinnin* made a warranty that the contract was bona fide and actually executed by the buyers. Because an assignor may transfer all rights in the thing transferred to the assignee, we conclude that, in the absence of an express warranty, the assignment alone does not give rise to privity of estate between an assignor and an assignee.

 In addition to express warranties, which may be given by an assignor, certain implied warranties are given if the assignor receives value for the assignment:

> Accordingly, one who assigns for value a chose in action impliedly warrants in the absence of a manifestation of a contrary intention that the claim is genuine and legally enforceable up to the amount, if any, specified in the assignment

The Restatement (Second) of Contracts provides somewhat more extensive warranties, specifying: "(1) Unless a contrary intention is manifested, one who assigns or purports to assign a right by assignment under seal or for value warrants to the assignee (a) that he will do nothing to defeat or impair the value of the assignment and has no knowledge of any fact which would do so; (b) that the right, as assigned, actually exists and is subject to no limitations or defenses good against the assignor other than those stated or apparent at the time of the assignment; (c) that any writing evidencing the right which is delivered to the assignee or exhibited to him to induce him to accept the assignment is genuine and what it purports to be. (2) An assignment does not of itself operate as a warranty that the obligor is solvent or that he will perform his obligation. (3) An assignor is bound by affirmations and promises to the assignee with reference to the right assigned in the same way and to the same extent that one who transfers goods is bound in like circumstances. (4) An assignment of a right to a sub-assignee does not operate as an assignment of the assignee's rights under his assignor's warranties unless an intention is mani-

fested to assign the rights under the warranties.

28 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 74:7 (4th ed.2003) (footnotes omitted). Consequently, privity of estate may be created by virtue of the implied warranties that follow assignments made for value. We must then determine what constitutes value given for an assignment of a contract for the sale of real property. Because an assignment is not a contract, the question of whether an assignee has given value is not the same question as whether a promisee has given consideration. E. Allan Farnsworth, *Contracts* § 11.6, p. 726 (3d ed.1999). According to the Restatement (Second) Contracts § 332(5) (1979), an assignee gives value by taking the assignment either "in exchange for something that would be consideration for a promise," or "as security for or in total or partial satisfaction of a preexisting obligation." If value is not given in exchange for the assignment, then the assignment is considered gratuitous. *Id.* at § 332(5). "In general, gratuitous assignments are revocable." E. Allan Farnsworth, *Contracts* § 11.6, p. 723. There is ample authority to support the proposition that there can be no effective assignment "where the assignor retains control over the [thing assigned] or any authority to collect or any power to revoke." *See, e.g., Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 558 (2d Cir.1976); *see also, Natwest USA Credit Corp. v. Alco Standard Corp.*, 858 F.Supp. 401 (S.D.N.Y.1994). Consequently, if Mr. Collier retained control over his assignment to Webb, then there was no effective assignment and no privity created between Mr. Collier and Webb. However, even if an assignment is gratuitous, it may become irrevocable if: "(a) the assignment is in a writing either signed or under seal that is delivered by the assignor; or (b) the assignment is accompanied by delivery of a writing of a type customarily accepted as a symbol or as evidence of the right assigned." Restatement (Second) Contracts § 332(2) (1979). Moreover, where an assignee relies upon the assignment to his or her detriment, a gratuitous assignment may be deemed irrevocable in the interest of equity. *Id.* at § 332(4); *see also Salmons v. Womack*, No. 85–75–II, 1986 WL 4847, at *3 (Tenn.Ct.App., Apr. 25, 1986), *perm. app. denied* (Tenn. Sept. 8, 1986).

 Because an assignment is not a contract, there can be no privity of contract between the assignor and assignee absent something more. Following an effective assignment, the assignee stands in the shoes of the assignor, and the assignor relinquishes his or her rights in the thing assigned. Because the assignor retains no right in the thing assigned and because the obligation to pay the purchase price is not a covenant running with the land, there is no privity of estate between the assignor and assignee absent some further action. Privity of estate may be created by an assignment where the assignor gives express warranty, or where the assignor receives value for the assignment, thereby giving certain implied warranties. In the absence of value given, where the assignor retains the power of revocation, there is no effective assignment, unless the criteria set out in the Restatement (Second) Contracts § 332(2) are met, or unless the assignee detrimentally relies upon the assignment.

In this case, the trial court granted Appellees' Tenn. R. Civ. P. 12.02(6) motion based upon its finding that Mr. Collier was in privity with his assignee Webb. A Tenn. R. Civ. P. 12.02 motion tests the sufficiency of the complaint. In his complaint, Mr. Collier avers, in relevant part, as follows:

6. Pursuant to a First Agreement for Purchase and Sale . . . Collier or assigns

agreed to purchase certain real property....

7. The contract was assigned by Collier to Webb MTN, LLC....

8. At all relevant times hereto, Collier is and has remained the sole member of Webb Mountain.

Neither the original agreement for the sale of real property between Mr. Collier and Greenbrier, nor the assignment executed between Mr. Collier and Webb are included in the appellate record. We have only the statement in the complaint that "[t]he contract was assigned by Collier to Webb...." Our standard of review under a Tenn. R. Civ. P. 12.02 disposition requires us to make all inferences in favor of the plaintiff and in support of the complaint. We have held, above, that an assignment of a contract for the sale of real property, without more, does not give rise to privity of contract or estate between the assignor and assignee. Examining Mr. Collier's complaint, we cannot determine whether an express warranty was given by Mr. Collier, whether value was given by Webb, whether Mr. Collier retained control to revoke the assignment, or whether Webb detrimentally relied upon the assignment. In short, based upon the statement in the complaint alone, we cannot determine whether privity exists between Mr. Collier and his assignee Webb. Consequently, we find the record before us does not establish privity.

For the foregoing reasons, we reverse the trial court's order granting Appellees' Tenn. R. Civ. P. 12.02 motion and dismissing Mr. Collier's complaint. We remand the case for such further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are assessed to the Appellees, Greenbrier Developers, LLC, Executive Realty Partnership, LP, Gerald Franklin, and Kenneth Whaley, for which execution may issue if necessary.