IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 1, 2024 Session

**IN RE ESTATE OF JOYCE ANN HENDRICKSON**

**Appeal from the Circuit Court for Davidson County**
**No. 19P888      Amanda Jane McClendon, Judge**

_____

**No. M2023-01683-COA-R3-CV**
_____

An LLC owned seven properties. The members of the LLC were a mother, father and daughter. Mother held the majority voting share. As manager of the LLC, Mother transferred most of its assets to another LLC, whose members were her daughter and son-in-law, without the knowledge of Father. Mother died and her estate sought to recover the assets for the original LLC. The trial court found that Daughter had a conflict of interest and that Mother/Decedent also had a conflict of interest. The trial court also found that the transactions violated Tennessee statutes and the "entire fairness test" of *Rock Ivy Holding, LLC v. RC Properties, LLC*, 464 S.W.3d 623 (Tenn. 2014). The trial court declared the transactions void. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JEFFREY USMAN, J., joined.

Matthew Hausman and Patrick Matthew Potempa, Nashville, Tennessee, for the appellants, Jessica L. Ruckheim and Stettin Holdings, LLC.

Richard Horton Frank, III, Nashville, Tennessee, pro se as administrator CTA for the estate of Joyce Ann Hendrickson.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

JOH Properties, LLC ("JOH") is a Tennessee limited liability company formed by Joyce Ann Hendrickson in 2009. JOH had three members: Mrs. Hendrickson, her husband, Timothy Hendrickson, and their daughter, Jessica Ruckheim. Shortly after the formation

of JOH, seven parcels of real property were conveyed to JOH pursuant to seven quitclaim deeds.[1]  These properties represented all, or substantially all, of JOH's assets.

Mrs. Hendrickson ("Decedent") died on March 18, 2019.  At the time of her death, Decedent was the sole manager of JOH and held an 82.5787% interest in the governance and financial rights of JOH, including two of the four Class A voting interests.  Mr. Hendrickson held a 5.8237% interest with one of the four Class A voting interests, and Jessica Ruckheim held an 11.5976% interest with one Class A voting interest.

Shortly after administration of Decedent's estate was opened, R. Horton Frank, III, was appointed to serve as Administrator CTA ("Administrator").  He discovered that all seven parcels of real estate had been conveyed by JOH to Stettin Holdings, LLC ("Stettin") a Texas limited liability company owned and controlled by Jessica Ruckheim and her husband, Jonathan Ruckheim.  On October 7, 2021, Administrator filed a complaint against Stettin and Jessica Ruckheim (collectively, "Defendants") seeking to set aside the seven quit claim deeds and declare them void because they were conflict of interest transactions not authorized, approved, or ratified by JOH as required under Tenn. Code Ann. § 48-249-404.  Defendants responded that a conflict of interest existed as to Jessica Ruckheim, but the transactions were not voidable because two of the four exceptions set forth in the statute applied.

The trial court heard the matter on September 6, 2023.  Jessica Ruckheim testified that no money was paid to JOH or to Decedent individually for the conveyance of the seven quitclaim deeds to Stettin, nor was there any other consideration exchanged as part of the transaction.  Administrator also testified.  He believed that Decedent did not receive any monetary benefit, but he claimed that she received some sort of intangible benefit by conveying the seven quit claim deeds to Stettin. Part of Administrator's testimony focused on his belief that Decedent breached her fiduciary duties as manager of JOH. He stated, however, that no breach of fiduciary duty claims had been brought against Decedent's estate by JOH or otherwise.

On November 2, 2023, the trial court entered an order setting aside the conveyances and declaring them void as conflict-of-interest conveyances.  The court's analysis focused on this Court's decision in *Rock Ivy Holding, LLC v. RC Properties, LLC*, 464 S.W.3d 623 (Tenn. Ct. App. 2014), which applied an "entire fairness" test in analyzing the third exception provided in the statute.  The trial court awarded Administrator his attorney fees and expenses pursuant to Tenn. Code Ann. § 48-249-804(b).

Defendants appealed.

---

[1] Mrs. Hendrickson conveyed one of the quitclaim deeds, and a family partnership formed by her parents conveyed the remaining six quitclaim deeds.

STANDARD OF REVIEW

Findings of fact by the trial court are reviewed de novo on the record with a presumption of correctness. TENN. R. APP. P. 13(d). The construction of statutes is a matter of law that is reviewed de novo with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

ANALYSIS

Standing is a threshold issue in this matter, so we will take up that issue first. Standing of the administrator to sue was not raised in the trial court,[2] so it would usually be waived. *In re Est. of Smallman*, 398 S.W.3d 134, 148 (Tenn. 2013). But, "[w]hen a statute creates a cause of action and designates who may bring an action, the issue of standing is interwoven with that of subject matter jurisdiction and becomes a jurisdictional prerequisite." *Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004).

Tennessee Code Annotated section. 48-249-801(a) states, in relevant part:

> A member or holder of financial rights of a director-managed LLC, or of a manager-managed LLC, may bring a proceeding in the right of an LLC to recover a judgment in its favor, if:
>
> . . . .
>
> (2) The member or holder of financial rights, as applicable, became a member or holder of financial rights through transfer by operation of law, from a person who was a member or holder of financial rights, as applicable, when the transaction complained of occurred.

JOH is a member-managed LLC. Decedent owned a substantial portion of the LLC. The administrator of Decedent's estate now holds her rights. Thus, Tenn. Code Ann. § 48-249-801(a)(2) makes standing "a jurisdictional prerequisite." *Osborn*, 127 S.W.3d at 740.

Defendants maintain that because Decedent was the manager and made the challenged transfer herself, she cannot have standing to bring this action. No one brought a claim for breach of a fiduciary duty against Decedent. Defendants claim that the only person who was injured by the transaction was the other member of JOH, Timothy Hendrickson, and only he could bring such an action. He did not do so. For the reasons discussed below, we must respectfully disagree.

---

[2] The trial judge did ask a question about Decedent's standing to sue if she had lived.

In *Collier v. Greenbrier Developers, LLC*, 358 S.W.3d 195, 198 (Tenn. Ct. App. 2009), the sole member of an LLC, Jack Collier, sued to void quitclaim deeds that transferred the LLC's real property. The trial court dismissed the complaint because it determined that Collier was in privity with the LLC "at the time of the transfers and was therefore precluded from attacking the property transfers." *Id*. at 198-99. The Court of Appeals agreed that if Collier stood in privity with the LLC, he would "be precluded from arguing that [the LLC] did not receive reasonably equivalent value for the transfer. The question on appeal, therefore, is whether Mr. Collier and [the LLC] are privies." *Id*. at 199. In answering this question, the court began by recognizing that, in Tennessee, an LLC is a separate entity from its members. *Id*. Based on this fundamental point of corporate law, the court determined that "the fact that Mr. Collier, as the sole member of [the LLC], signed the very quitclaim deed of which he now complains does not necessarily preclude his claim." *Id*. at 200-01 Furthermore, the record did not contain any facts that showed that Collier and the LLC had an identity of interest.[3] *Id*. at 204.

In the instant case, there is little doubt that the Administrator and the deceased are in privity. As the *Collier* court observed, privity arises in many ways, including "privies in representation, as is the executor or administrator to the deceased." *Id*. at 199 (quoting *Cotton v. Underwood*, 442 S.W.2d 632, 635, n.1 (Tenn. 1969)). The question, however, is whether Decedent was in privity with JOH. If she was, she and her estate would lack standing to challenge the validity of the transfer of the seven quitclaim deeds to Stettin. *See id*. at 199. Applying the reasoning of *Collier*, we must conclude that Decedent was not in privity with JOH. The deceased in this case is not the LLC, which is a separate legal entity. Thus, the fact that Decedent signed the deeds for the LLC does not create privity. The record reveals no identity of interest between JOH and the deceased. Consequently, we find no privity which would preclude standing in this case.

Another threshold issue is whether there is a final judgment in this case. Administrator argues that there is no final judgment in this case because there is no award of attorney's fees. Defendant's counsel addressed the issue in oral argument, stating, "As for the finality of the judgment, it's our position that after the court awarded the fees – the affidavit that he had submitted – we weren't going to challenge that so we believe that it is a final order." "This Court has repeatedly held a matter is not final until a request for attorney's fees has been fully adjudicated." *Fuqua v. Robertson Cnty. Election Comm'n*, No. M2022-01126-COA-R3-CV, 2023 WL 5529714, at *2, n.4 (Tenn. Ct. App. Aug. 28, 2023). Tennessee Rule of Appellate Procedure 2 allows this Court to suspend the final judgment requirement for "good cause." Counsel's concession that Defendants would not challenge the fee request constitutes "good cause" by furthering judicial economy and foreclosing needless delay in resolving this case and the estate. Therefore, we waive the finality requirement pursuant to our authority in Rule 2.

---

[3] The *Collier* case arose from a Tenn. R. of Civ. P. 12.02 motion and, therefore, was based solely on the complaint.

The transactions transferring the seven properties from JOH to Stettin are challenged by Administrator because Jessica Ruckheim, the daughter of Decedent, is a member of both LLCs. No one disputes that these transfers are conflict of interest transactions. Rather, Stettin and Jessica Ruckheim maintain that the transactions fall within the exceptions of Tenn. Code Ann. § 48-249-404(a)(1) & (4). They also challenge the application of *Rock Ivy Holding, LLC v. RC Properties, LLC*, 464 S.W.3d 623 (Tenn. Ct. App. 2014) to this case.

Tennessee Code Annotated, sec. 48-249-404(a)(1) states:

(a) A conflict of interest transaction is a transaction with the LLC in which a member, manager, director or officer, as applicable, of the LLC has a direct or indirect interest. A conflict of interest transaction is not void and is not voidable by the LLC, and does not violate the duty of loyalty in § 48-249-403(b)(2), solely because of the interest of a member, manager, director or officer in the transaction, if any one (1) of the following is true:

(1) The material facts of the transaction and the interest of the member, manager, director or officer, as applicable, were disclosed or known to the managers or board of directors, as applicable, and the managers or board of directors, as applicable, authorized, approved or ratified the transaction;

Jessica Ruckheim was a member of both Stettin and JOH, so she has an indirect interest. Administrator contends that Decedent also had an indirect interest because she used the transactions as a form of estate planning, probably due to her impending death, and attempted to make a gift of the seven properties to her daughter.[4] Jessica Ruckheim argues that "indirect interest" must be read more narrowly. She points to Tenn. Code Ann. § 48-249-404(b):

For purposes of this section, a member, manager, director or officer of the LLC has an indirect interest in a transaction, if, but not only if:

(1) Another entity in which the member, manager, director or officer has a material financial interest, or in which the member, manager, director or officer, as applicable, is a general partner, is a party to the transaction; or

_____

[4] Of course, Decedent did not own the properties, the LLC did. Decedent owned a majority interest in the LLC.

(2) Another entity for which the member, manager, director, or officer is a member, governor, director, manager, officer or trustee is a party to the transaction, and the transaction is, or should be, considered by the members, managers or directors, as applicable, of the LLC.

Jessica Ruckheim argues that Decedent received no direct benefit from the transaction, and "never had a material financial interest nor was she ever a member, governor, director, manager, officer or trustee of Stettin Holdings." This argument overlooks the significant statutory language "if, but not only if," which precedes the examples upon which she relies. Statutes are interpreted in accordance with the legislative intent, which is found in the natural and ordinary meaning of the language used. *Griffin v. Cambell Clinic, P.A.*, 439 S.W.3d 899, 903 (Tenn. 2014). The language of the statute expands the definition of "indirect interest" beyond the examples listed.

Strikingly similar language was examined in *Holmes Financial Associates, Inc. v. Jones*, No. 02A01-9104CH00071, 1991 WL 268370, at *5-6 (Tenn. Ct. App. Dec. 18, 1991). The language examined was from Tenn. Code Ann. § 48-18-302(b), since amended, a provision that dealt solely with corporations. *Id*. Tenn. Code Ann. § 48-249-404(b) contains the exact same language with additions reflecting its application to LLC officers. The Tennessee act was based on the revised model business corporation act, which had a comment that stated:

For purposes of section 8.31 a director should normally be viewed as interested in a transaction if he or the immediate members of his family have a financial interest in the transaction or a relationship with the other parties to the transaction such that the relationship might reasonably be expected to affect his judgment in the particular matter in a manner adverse to the corporation.

*Holmes*, 1991 WL 268370 at *7. The court found a conflicting interest based on the comment, not the examples in the statute. *Id*. at *8. Thus, this court did not interpret the language "if, but not only if," narrowly, but in accordance with the more expansive meaning of the language and the comment to the model act. *Id*.

In this case, Decedent and Jessica Ruckheim had a mother/daughter relationship. This relationship "might reasonably be expected to affect" Decedent's judgment in a manner that was adverse to JOH when transferring the seven quitclaim deeds. Thus, relying on the language of Tenn. Code Ann. § 48-249-404(b) and *Holmes*, we conclude that Decedent had an indirect interest in the transactions at issue in this case. Because Decedent had a conflict of interest and acted as manager of JOH, we must examine Tenn. Code Ann. § 48-249-404(c), which states:

For purposes of subdivision (a)(1), a conflict of interest transaction is authorized, approved or ratified, if it receives the affirmative majority vote of the managers or of the directors on the board of directors, as applicable, who have no direct or indirect interest in the transaction, and a transaction may be authorized, approved or ratified under this section by a single manager or director, as applicable. If a majority of the managers or the directors, as applicable, who have no direct or indirect interest in the transaction vote to authorize, approve or ratify the transaction, a quorum is present for the purpose of taking action under this section. The presence of, or a vote cast by, a manager or director, as applicable, with a direct or indirect interest in the transaction, does not affect the validity of any action taken under subdivision (a)(1), if the transaction is otherwise authorized, approved or ratified as provided in that subdivision (a)(1).

Thus, a manager with a conflict of interest cannot approve a transaction. Had the interests been disclosed to all members, then they could have proceeded under Tenn. Code Ann. § 48-249-404((a)(2)(B), which would allow all members to vote even if one or more had conflicts.[5] However, no vote of the members was held. The transactions were not properly authorized, approved, or ratified under Tenn. Code Ann. § 48-249-404(a)(1).

Defendants also argue that Tenn. Code Ann. § 48-249-404(a)(4) permits the transactions. It states: "The transaction was of such a nature that the conflict of interest is waived by the LLC documents. Such waiver shall be upheld, unless manifestly unreasonable under the circumstances." Defendants rely on the LLC Operating Agreement, § 7.8 to permit the transactions. This provision states:

A conflict of interest transaction is a transaction with the Company in which a Member, manager, or officer of the Company has a direct or indirect interest. A conflict of interest transaction is not void and is not voidable by the Company solely because of the interest of a Member, Manager, or Officer in the transaction, if any one (1) of the following is true:

(b) The material facts of the transaction and the interest of the Member, Manager, of officer, as applicable, were disclosed or known either (i) to the Manager or, if appliable, the members entitled to vote, and the Manager (or Members as applicable) authorized, approved or ratified the transaction.

In their brief, Defendants lay their cards on the table for all to see:

---

[5] Had he been informed, Timothy Hendrickson would have had a conflict because Jessica Ruckheim was his daughter.

Section 7.8(b) of the [O]perating [A]greement allows a manager to approve the transaction so long as the manager knew of the conflict-of-interest. However, the Operating Agreement does not have a similar provision that would disqualify a manager from approving a transaction if the manager also holds a direct or indirect interest. *See* Tenn Code Ann. § 48-249-404(c). As such, even if there was a determination that Decedent had a direct or indirect interest in the transaction, she would have still had the authority to approve the transaction under the provisions of the Operating Agreement for JOH.

Tennessee Code Annotated, section 48-249-404(a)(4) says that the waiver will be upheld unless it is "manifestly unreasonable under the circumstances." We have already determined that Decedent had an indirect conflict of interest. The record shows that Decedent used the transactions as a way to make a gift to her daughter or as an estate planning device and that the transactions removed almost all the assets from JOH. Furthermore, the transactions were not made in accordance with Tenn. Code Ann. § 48-249-404(a)(1) and (c). Testimony showed that Timothy Hendrickson, the other member of JOH, was kept in the dark about the transactions until after this case was filed. Based on the entirety of the circumstances, we find these transactions to be manifestly unreasonable and void.[6]

We respectfully decline to award attorney's fees on appeal.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed equally against the appellants, Stettin Holdings, LLC and Jessica Ruckheim, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE

---

[6] In light of our conclusion that that transactions are void based on the statutes, we find that we do not need to examine the "entire fairness test" of *Rock Ivy Holding, LLC*, 464 S.W.3d 623.