IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 12, 2025 Session

## FIRST SOUTH FINANCIAL CREDIT UNION v. COLLIERVILLE 385 MOTORS, LLC

**Appeal from the Circuit Court for Shelby County**
**No. CT-0797-24      Mary L. Wagner, Judge**

_____

### No. W2024-01084-COA-R3-CV

_____

Appellant appeals from the trial court's denial of a motion to vacate a default judgment. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which KENNY ARMSTRONG, and CARMA DENNIS MCGEE, JJ., joined.

Dennis G. Sadler and Warren McWhirter, Memphis, Tennessee, for the appellant, Collierville 385 Motors, LLC.

Lisa N. Stanley, Memphis, Tennessee, for the appellee, First South Financial Credit Union.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

This matter stems from a "Non-Recourse Dealer Agreement" ("the Agreement") formed in 2013 between Plaintiff/Appellee First South Financial Credit Union ("the Credit Union") and Defendant/Appellant Collierville 385 Motors, LLC ("the Dealership"). Under the Agreement, the Dealership's customers would receive financing provided by the Credit Union to purchase a vehicle. The Credit Union would then purchase the contract between the customer and the Dealership for "discounted rates to be established by the Credit Union" and an agreed "participation fee."

On February 28, 2024, the Credit Union filed a verified complaint in the Shelby County Circuit Court ("the trial court"). Therein, the Credit Union alleged "[o]n information and belief, after investigation," that one of the Dealership's employees falsified an unauthorized purchase contract in July 2023, which the Credit Union purchased for the $59,633.19 amount purportedly financed and a $1,192.66 participation fee. According to the complaint, no payments were made on the allegedly fraudulent contract and when the Credit Union attempted to repossess the vehicle, "it discovered that several vehicles were being sought at this address from various creditors." The complaint alleged that the Dealership initially agreed to buy back the fraudulent contract but failed to make any payments, and that the Credit Union sent a written demand to the Dealership in January 2024, but no further communication between the parties occurred. The Credit Union raised claims for breach of contract, fraud, promissory estoppel, and unjust enrichment, and also requested its attorney's fees.

After unsuccessfully attempting to obtain service on the Dealership's registered agent, the Credit Union obtained service on Penny Stein, the Dealership's office manager, on March 7, 2024. When no response was filed, the Credit Union moved for default judgment on April 9, 2024.

The trial court entered an order granting default judgment on April 19, 2024. The writ of inquiry was heard and the trial court entered its order of judgment on May 8, 2024, awarding the Credit Union $60,825.85 in damages and $20,273.26 in attorney's fees.

The Dealership filed a notice of appearance and a motion to set aside the default judgment on May 21, 2024. The Dealership argued that its failure to respond to the complaint was the result of "reasonable neglect under the circumstances." The Dealership admitted that its agent for service of process listed with the Tennessee Secretary of State left its employ in September 2023, and that service was instead made upon Ms. Stein. The Dealership explained that Ms. Stein resigned shortly after receiving service without informing anyone of the complaint or the correspondence directed to the registered agent. The Dealership further explained that, as its chief financial officer, Vickie Smith, both worked out of state and went on annual vacation shortly after Ms. Stein resigned, the complaint and other filings directed to its registered agent "were not discovered in sufficient time to allow [the Dealership] to secure counsel and take action prior to the entry of the Default Judgment and Order of Judgment." The Dealership argued that it had defenses against the complaint and no prejudice would result if the matter were heard on its merits.

The Dealership then filed an amended motion to set aside the default judgment on June 13, 2024. Included with the amended motion was the declaration of Ms. Smith,[1] which stated that she did not become aware of the complaint until the week of April 14, 2024, when she traveled to the Dealership office in person.[2] Ms. Smith further stated that she notified the Dealership's insurer "[i]mmediately upon discovering the notice of suit in this matter . . . and relied upon them to respond." The amended motion also expanded on the Dealership's defenses, including that the Credit Union failed to mitigate its damages and was not entitled to any relief under the Agreement. In the alternative to setting aside the default judgment, the Dealership requested that the trial court limit the Credit Union's award in accordance with the terms of the Agreement.

In its June 19, 2024 response, the Credit Union argued that the delay in response was willful. The Credit Union argued that the Dealership failed to provide sufficient evidence that only Ms. Stein knew of the complaint, and questioned the Dealership's decisions not to make its mail digitally available to Ms. Smith prior to her arrival in-office or to update its registered agent for service of process. The Credit Union took issue with the Dealership's failure to participate in the action prior to the April 19, 2024 hearing on the motion for default judgment despite Ms. Smith's admission that she was aware of the lawsuit in the days beforehand. It suggested that the Dealership could have (1) filed an answer, (2) contacted the Credit Union's counsel and requested an extension of time in which to file an answer, or (3) appeared at the default hearing. The Credit Union also highlighted the Dealership's failure to participate in the May 8, 2024 writ of inquiry hearing despite the copy of the order granting default judgment sent by the Credit Union.[3] Thus, it argued, the Dealership's "alleged circumstances were all curable by proper and reasonable communication, management, and oversight that [the Dealership] simply and willfully failed to practice," and so could not be deemed excusable neglect. The Credit Union also denied that the Dealership failed to assert any meritorious defenses.

The matter was heard on June 21, 2024, and the trial court entered its order on June 28, 2024. The trial court found that Ms. Smith "failing to take the necessary steps to protect [the Dealership's] interests, such as filing an answer or appearing at either hearing noticed by [the Credit Union's] counsel amount[ed] to willful and deliberate neglect by [the

---

[1] As pointed out by the Credit Union, the document was not notarized. However, at the motion hearing, the trial court accepted the document as a declaration made under penalty of perjury in lieu of an affidavit, as allowed by Tennessee Rule of Civil Procedure 72.

[2] The Dealership's counsel explained at the motion hearing that Ms. Smith actually became aware of the complaint on April 15, 2024.

[3] Included with the Credit Union's motion was the affidavit of its counsel, Lisa Stanley, stating that she mailed a copy of the motion for default judgment, the order granting default judgment, and the order of judgment to the Dealership in care of its registered agent on the dates they were filed, none of which were returned. Attorney Stanley further averred that the first communication she received from the Dealership was service of its notice of appearance and motion to set aside the default judgment.

Dealership] and [was] not excusable neglect[.]" Based on its finding that the Dealership's conduct was willful and not excusable neglect, the trial court did not consider whether the Dealership had a meritorious defense or whether the Credit Union would be prejudiced if relief were granted.

However, the trial court did address the Dealership's alternative argument that the order of judgment should be amended to reflect only those damages allowed under the Agreement. The trial court noted that the parties agreed that the Agreement did not provide for the award of attorney's fees. The trial court found that while the Dealership argued that the Credit Union was not entitled to the recovery of damages under the Agreement, the Credit Union's complaint also alleged damages on the basis of fraud. As "a judgment by default is generally considered an admission of all the properly pleaded material allegations of fact in the complaint," the trial court concluded that the Credit Union was entitled to recover its damages even without considering the Agreement. (Citing ***H.G. Hill Realty Co., L.L.C. v. Re/Max Carriage House, Inc.***, 428 S.W.3d 23, 30 (Tenn. Ct. App. 2013)). Therefore, the Dealership's alternative motion to amend the judgment was granted in part and denied in part.

The altered order of judgment removing the award of attorney's fees, thus reducing the Credit Union's award to $60,825.85, was entered July 15, 2024. This appeal followed.

## II. ISSUES PRESENTED

The Dealership raises the following issues, taken directly from its brief:

1. Did the Circuit Court abuse its discretion in Denying [the Dealership's] Motion to Set Aside Default Judgment?
2. Did the Court err in finding that [the Credit Union] sufficiently pleaded allegations of fraud with particularity and awarding damages on the basis of fraud?

The Credit Union raises one additional issue: "Whether [the Dealership] waived the issue of sufficiency of pleading fraud in the complaint."

## III. STANDARD OF REVIEW

Tennessee Rule of Civil Procedure 55.02 provides that: "For good cause shown the court may set aside a judgment by default in accordance with Rule 60.02." Rule 60.02 provides relief from final judgments as follows:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding

- 4 -

for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

Tenn. R. Civ. P. 60.02. The Dealership's motion to set aside the default judgment premised its request for relief primarily on Tennessee Rule of Civil Procedure 60.02(1); so too did the trial court base its denial of the Dealership's motion on its consideration of Rule 60.02(1). However, because the Dealership's May 21, 2024 motion was filed within thirty days of the trial court's May 8, 2024 order of judgment, it should instead be deemed a motion to alter or amend the judgment under Tennessee Rule of Civil Procedure 59.04. *See Discover Bank v. Morgan*, 363 S.W.3d 479, 489 (Tenn. 2012) (noting that Rule 60.02 provides for relief from final judgments while Rule 59.04 relates to judgments which have not become final). Like Rule 60.02(1), Rule 59 can provide relief from an order due to mistake, inadvertence, surprise, or excusable neglect. *Henson v. Diehl Machines, Inc.*, 674 S.W.2d 307, 310 (Tenn. Ct. App.1 984) (citing *Campbell v. Archer*, 555 S.W.2d 110, 112 (Tenn. 1977)).

Nevertheless, pursuant to Rule 55.02, the decision to set aside a default judgment is reviewed for an abuse of discretion whether considered under either Rule 59 or Rule 60.[4] *See Ferguson v. Brown*, 291 S.W.3d 381, 386 (Tenn. Ct. App. 2008). An abuse of discretion occurs when a trial court has "applied an incorrect legal standard[] or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003) (quoting *State v. Stevens*, 78 S.W.3d 817, 832 (Tenn. 2002)). Under this standard, an appellate court is not

---

[4] Similarly, our supreme court has noted that the analysis of the merits of a Rule 59.04 motion to alter or amend a non-final default judgment is "equally applicable" to a Rule 60.02 motion to set aside a final default judgment. *Tenn. Dep't of Hum. Servs. v. Barbee*, 689 S.W.2d 863, 867 (Tenn. 1985) (citing *Campbell*, 555 S.W.2d 110); *see also Henry*, 104 S.W.3d at 481 (noting that "[a]lthough Rule 59.04 and Rule 60.02 are distinct, there is considerable overlap between them"). As the trial court reviewed the Dealership's motion under Rule 60.02 and the parties do not present any argument that the finality of the default judgment impacts the test to be applied, we utilize caselaw addressing motions under both Rules. *See Keck v. Nationwide Sys., Inc.*, 499 S.W.2d 266 (Tenn. Ct. App. 1973) (cited by the Dealership as an "instructive case") (referencing Rule 60.02 despite addressing a motion to set aside a non-final decree of default judgment); *see also Pryor v. Rivergate Meadows Apartment Assocs. Ltd. P'ship*, 338 S.W.3d 882 (Tenn. Ct. App. 2009) (discussing Rule 60.02(1) after determining that the relevant motion should have been brought under Rule 59.04).

permitted to substitute its judgment for that of the trial court, and a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting ***State v. Scott***, 33 S.W.3d 746, 752 (Tenn. 2000)). Despite this highly deferential standard of review, a motion requesting relief from a default judgment should be "construed with liberality[.]" ***Barbee***, 689 S.W.2d at 867. Thus, "if any reasonable doubt exists as to whether the default judgment should be set aside, the court should grant relief." ***Est. of Vanleer v. Harakas***, No. M2001-00687-COA-R3-CV, 2002 WL 32332191, at *3 (Tenn. Ct. App. Dec. 5, 2002) (citing ***Nelson v. Simpson***, 826 S.W.2d 483, 485 (Tenn. Ct. App. 1991); ***Keck***, 499 S.W.2d at 267).

## IV. ANALYSIS

### A.

The Dealership argues that the trial court abused its discretion in refusing to set aside the default judgment, as the Dealership's failure to timely respond to the Credit Union's complaint was the result of excusable neglect. The party seeking relief from a default judgment has the burden to "offer proof of the basis on which relief is sought." ***Henry***, 104 S.W.3d at 482. To meet this burden, the movant must "set forth in a motion or petition and supporting affidavits facts explaining why the movant was justified in failing to avoid the mistake, inadvertence, surprise or neglect." ***Tenn. State Bank v. Lay***, 609 S.W.2d 525, 527 (Tenn. Ct. App. 1980).

Three factors must be considered when determining if a default judgment should be vacated on the basis of excusable neglect: "(1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) whether the non-defaulting party would be prejudiced if relief were granted." ***Henry***, 104 S.W.3d at 481 (citing ***Barbee***, 689 S.W.2d at 866).[5] The trial court's assessment of these factors is accorded great weight. *See* ***Barbee***, 689 S.W.2d at 867 ("[T]he trial court is in the best position to assess the various factors that should be considered in determining whether a default judgment should be vacated.").

---

[5] In a similar context, the Tennessee Supreme Court has adopted the following framework for considering whether a party's failure to meet a deadline constitutes excusable neglect: "(1) the risk of prejudice to parties opposing the late filing, (2) the delay and its potential impact on proceedings, (3) the reasons why the filings were late and whether the reasons were within the filer's reasonable control, and (4) the good or bad faith of the filer." ***Williams v. Baptist Mem'l Hosp.***, 193 S.W.3d 545, 551 (Tenn. 2006) (citing ***Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship***, 507 U.S. 380, 388, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)) (considering the concept of "excusable neglect" in relation to a Rule 6.02 motion for an enlargement of time); *see also* ***World Relief Corp. of Nat. Ass'n of Evangelicals v. Messay***, No. M2005-01533-COA-R3-CV, 2007 WL 2198199, at *7 (Tenn. Ct. App. July 26, 2007) ("We see no reason to give the term ["excusable neglect"] a different meaning in Rule 60.02(1) than it has in Rule 6.02(2).").

To reconcile the concepts of "excusable neglect" and "willfulness," this Court has explained that the "approach has been to find that negligence, a form of neglect, may be excusable and to employ willfulness as a critical factor in distinguishing neglect that is excusable from that which is not." *Messay*, 2007 WL 2198199, at *7 n.9. Indeed, "not all negligence can be indulged. To do that would read out of the excusable neglect principle the requirement that the neglect must first be found excusable." *State ex rel. Sizemore v. United Physicians Ins. Risk Retention Grp.*, 56 S.W.3d 557, 567 (Tenn. Ct. App. 2001). Willfulness is "conduct that is more than merely negligent or careless." *McBride v. Webb*, No. M2006-01631-COA-R3-CV, 2007 WL 2790681, at *3 (Tenn. Ct. App. Sept. 25, 2007) (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)). Willfulness includes both a party's "deliberate choices" and "conduct that is flagrant and unexplained." *Discover Bank*, 363 S.W.3d at 493 (citations omitted). Furthermore, willfulness is a threshold inquiry: "If the court finds that the defaulting party has acted willfully, the judgment cannot be set aside on 'excusable neglect' grounds, and the court need not consider the other factors." *Id.* at 494.

Here, the trial court determined that the Dealership's failure to file a timely response to the Credit Union's complaint was the result of willful and deliberate neglect. Our analysis as to whether this determination constitutes an abuse of discretion begins with a review of the timeline of events.

The Credit Union made a demand upon the Dealership in January 2024, to recover its losses from the allegedly fraudulent contract. The Credit Union then filed its complaint in February 2024.

The Dealership admits that at no point during the course of these proceedings was the person listed with the Tennessee Secretary of State as its registered agent actually employed by the Dealership. The Dealership does not dispute that the Credit Union's complaint was effectively served on its office manager, Ms. Stein, on March 7, 2024. Ms. Stein submitted her notice of resignation on March 25, 2024, and began training another employee to fill the office manager position. Ms. Stein left the Dealership on April 5, 2024, and Ms. Stein's replacement left without warning on April 8, 2024. The Dealership states that neither Ms. Stein nor her replacement forwarded any documents related to this matter to, or discussed this matter with, any other employee of the Dealership prior to their departures. After April 8, 2024, the Dealership appointed another employee "to gather and compile correspondence" until its chief financial officer, Ms. Smith, "could arrange to travel" to the Dealership's office.

An answer to the Credit Union's complaint was due on April 7, 2024. The Credit Union moved for default judgment on April 9, 2024. Counsel for the Credit Union mailed a copy of this pleading to the Dealership's office, care of its registered agent.

The Dealership states that "[i]t was not until April 14, 2024, at the earliest," that Ms. Smith "was able to travel" to the Dealership. Ms. Smith did not find the Credit Union's complaint until April 15, 2024. "Immediately upon discovering the notice of suit in this matter," Ms. Smith notified the Dealership's insurer "and relied upon them to respond."

The Credit Union's motion for default judgment was heard on April 19, 2024; no representative of the Dealership appeared. The same day, the trial court entered its order granting default judgment, which also set the writ of inquiry hearing for May 8, 2024. Counsel for the Credit Union mailed a copy of this order to the Dealership's office, in care of its registered agent. The writ of inquiry hearing was held as scheduled on May 8, 2024; no representative of the Dealership appeared. The same day, the trial court entered its order of judgment. Counsel for the Credit Union mailed a copy of this order to the Dealership's office, in care of its registered agent. Without any prior correspondence to the Credit Union, the Dealership filed notice of its counsel's appearance and its motion to set aside the default judgment on May 21, 2024.

The Dealership argues that this timeline shows that its delay was the result of only excusable neglect, as the Credit Union was not prejudiced by the delay, the delay itself was minimal, the reason for delay was not the result of bad faith, and Ms. Smith notified the Dealership's insurer "[i]mmediately" upon gaining personal knowledge of the suit. From our review, however, we cannot agree. This is not a case where the defaulting party "acted diligently in attempting to protect [its] rights." *Lay*, 609 S.W.2d at 527. Nor is this a case where a lone negligent act was clearly the result of extenuating circumstances, or where the underlying complaint was inexplicably lost after service. *See Ferguson*, 291 S.W.3d at 390 (finding excusable neglect where counsel's failure to meet deadlines was caused by his failure to calendar the deadlines due to a "serious, life threatening family situation"); *Keck*, 499 S.W.2d at 267–68 (reversing the denial of a motion to set aside a default judgment where the complaint was mistakenly lost after being mailed from the defendant's local office to its national office). Instead, there is simply no explanation for the majority of the underlying conduct, and what conduct is explained involved deliberate choices and factors within the Dealership's reasonable control. *See Discover Bank*, 363 S.W.3d at 493; *Williams*, 193 S.W.3d at 551.

Indeed, there is much that the Dealership does not explain. There is no explanation for why the knowledge of the suit possessed by Ms. Stein upon receipt of the Credit Union's complaint on March 7, 2024, should not be imputed to the Dealership, when she remained its employee until April 5, 2024. There is also no explanation for why Ms. Stein did not inform another employee of her receipt of service and other correspondence addressed to the Dealership's registered agent, other than vague allusions that she

"apparently anticipated resigning her position."[6]

Moreover, there is no explanation for why, despite receiving a written demand in January 2024, the Dealership was caught off guard by a lawsuit initiated in February 2024. There is also no explanation for the Dealership's failure to update its registered agent to someone actively employed by the Dealership and so able to receive his or her mail directly, or its failure to conduct any review of Ms. Stein's work or workload between her notice of resignation and her departure. And although Ms. Smith explains that she was on vacation for the week following Ms. Stein's March 25, 2024 notice of resignation, there is no explanation for Ms. Smith's inability to travel to the Dealership's office until April 14, 2024, three weeks later.

The Dealership places great emphasis on the fact that Ms. Smith notified the Dealership's insurer immediately upon becoming aware of the lawsuit. However, there is nothing in the record to suggest that this was the proper course of action for Ms. Smith to take. Nor is there any indication that any attempt was made to follow up with the insurer to ensure that the matter was being handled. We acknowledge that Ms. Smith, as a non-attorney, could not personally appear on behalf of the Dealership at the hearing on the Credit Union's motion for default judgment. *See* ***Collier v. Greenbrier Devs., LLC***, 358 S.W.3d 195, 200 (Tenn. Ct. App. 2009) (noting that a limited liability company "may only appear in court through counsel" (quoting 83 Am. Jur. 2d Limited Liability Companies § 1)). But there is no indication that anyone at the Dealership made any inquiry regarding the outcome of the hearing or the hearing's effect on the Dealership's rights. The Dealership does not deny receiving the copies of the April 19, 2024 order of default, which included a notice of the May 8 writ of inquiry hearing. Yet there is no indication that receipt of this order triggered any action by the Dealership. Rather, it appears that Ms. Smith notified the Dealership's insurer of the pending lawsuit and then simply took no further action.[7]

A similar situation arose recently in ***Brown v. HDR Logistics, LLC***, No. E2024-00144-COA-R3-CV, 2024 WL 4799723 (Tenn. Ct. App. Nov. 15, 2024). There, the defendant trucking company argued that its default was the result of excusable neglect, as its registered agent, who was properly served, failed to pass on actual notice of the litigation. *Id.* at *2–3. The defendant provided the affidavits of two employees stating that the company did not receive notice of the litigation until nine months after the entry of default judgment; the defendant did not provide, however, the affidavit of the registered agent. The trial court denied the defendant's motion to set aside the default judgment, finding "no merit" to the defendant's attempts to divorce itself from its agent. *Id.* at *9.

---

[6] The Dealership did not provide an affidavit from Ms. Stein or her replacement discussing the cause of their apparently negligent treatment of the Credit Union's complaint and the correspondence addressed to the Dealership's registered agent.

[7] We note that the record does not contain an affidavit from the Dealership's insurer regarding what occurred once Ms. Smith notified it of the existence of the Credit Union's complaint.

Instead, the trial court found that "if [the agent] simply failed to notify Defendant of the lawsuit, that would be Defendant's problem for having hired her." *Id.* This Court agreed with the finding of willfulness, noting that the defendant, in not providing the affidavit of the agent explaining what happened, "failed to explain what the excusable neglect consisted of." *Id.* (noting that "[t]he record's silence as to [the agent's] actions is a significant omission"); *see also* **Herring v. Interstate Hotels, Inc.**, No. W1999-01055-COA-R3-CV, 2000 WL 34411154, at *4 (Tenn. Ct. App. Aug. 14, 2000) ("It is the position of the [defendant hotel] that, after being properly served, [the hotel chain's agent] neglected to timely notify [the hotel chain] that [the plaintiff] had filed a lawsuit against the [hotel]. Although we agree that this alleged inaction on the part of [the agent] constitutes neglect, we conclude that this type of neglect cannot be characterized as excusable within the meaning of Rule 60.02. The [defendant hotel] has not demonstrated any way in which [the agent] was justified in allegedly failing to avoid the neglect that occurred in the case at bar. Rather, the [hotel] seeks to avoid the consequences of this neglect by noting that it was [the agent], not the [hotel], that acted in a neglectful manner. Because [the agent] is an agent of the [hotel], however, we conclude that any neglect on the part of [the agent] is also attributable to the [hotel].").

So too did this Court determine that the defendant's failure to meet certain deadlines was not the result of excusable neglect in **State ex rel. Sizemore v. United Physicians Insurance Risk Retention Group**, 56 S.W.3d at 570. There, a doctor failed to timely file a proof of claim form with his malpractice insurer. *Id.* at 561. The doctor delegated the completion of the form to his office administrator. The office administrator then sent the partially completed form to the doctor's retained counsel, who said that he would "take care of it." *Id.* Eventually, the form was submitted three months late. The trial court found the untimely filing to be the result of excusable negligence and exempted the doctor from the deadline. *Id.* at 562.

This Court, however, reversed this finding. We noted that there was no indication that the doctor followed up with his office administrator concerning the filing of the form. *Id.* at 570. Nor was there any indication that the office administrator followed up with the retained counsel. *Id.* (noting that because the office administrator was the doctor's employee, "her oversights regarding the filing of the proof of claim form are attributable to him" (citations omitted)). The undisputed evidence, therefore, revealed "(1) an absence of any internal checks or controls in [the doctor's] office to assure that his important business was attended to and (2) a communication breakdown not only between [the doctor's] office and [counsel's] office but also between [the doctor] and his own staff." *Id.* at 570–71. Thus, the doctor's untimely filing of the proof of claim form was the result of his failure to "to put minimum safeguards in place to make sure that his employees and agents were taking care of his important business" and not excusable neglect. *Id.* at 571 (noting that "[a]ll of this was within [the doctor's] control had he made it a matter worthy of his attention"). *Compare id.* (not finding excusable neglect based on lack of

- 10 -

communication where no safeguards were in place and the delay was not discovered until months after the deadline had passed), *with **Patterson v. SunTrust Bank***, 328 S.W.3d 505, 512 (Tenn. Ct. App. 2010) (finding excusable neglect based on miscommunication between in-house and retained counsel where opposing counsel was informed and the delay rectified prior to the hearing on the motion for default judgment).

In ***State of Franklin Bank v. Riggs***, the trial court found that, while the defendants' neglect was not willful, it was also not excusable. No. E2010-01505-COA-R3-CV, 2011 WL 5090888 (Tenn. Ct. App. Oct. 27, 2011). There, the defendants failed to file an answer in the allotted time, and requested an extension. The plaintiff agreed to the extension, but also filed a motion for default judgment to be heard after the extended deadline elapsed; if the answer was filed before the hearing date, the plaintiff would withdraw the motion. Prior to the hearing, the defendants counsel withdrew his representation and requested an additional extension, which the plaintiff refused. The defendants informed the plaintiff of their ongoing attempts to find new representation and requested another extension. The plaintiff refused the request and the motion for default judgment was heard as scheduled. Although the pro se defendants argued against the motion, the trial court entered the order of default. *Id.* at *1. In response to the defendants' motion to set aside the default judgment, the trial court found that although the defendants established their delay was not willful, they had not met their burden of showing excusable neglect. *Id.* at *2.

This Court agreed. *Id.* at *5. We noted that the defendants explained their decision to dismiss their original counsel, consistently requested an extension of the time for filing, and kept the plaintiff informed of their status. Thus, "[w]hile the [d]efendants were negligent in failing to answer the complaint in a timely fashion and in failing to timely secure the services of an attorney, their behavior cannot be characterized as a willful decision to ignore the complaint and allow a default judgment to be entered against them." *Id.* Yet, we also determined that the defendants' neglect "was not excusable because they were aware that they had not received a second extension and that their continued failure to answer the complaint would result in the entry of a default judgment." *Id.* In other words, the defendants' decision to change attorneys prior to filing an answer amounted to an explanation, not an excuse, for their delay in filing.

Here, we discern no error in the trial court's finding that the Dealership's delay was not the result of excusable neglect. Like the defendants in ***Brown*** and ***Herring***, the Dealership attempts to lay all of the blame at the feet of its employee, Ms. Stein, without offering any justification for her actions. Like in ***Sizemore***, the Dealership's delay resulted from an absence of internal checks to ensure that its essential business was being attended to and a serious breakdown in communication between its employees. And like in ***Riggs***, although the Dealership had advanced notice of the hearings on the motion for default judgment and on the writ of inquiry, it took a course of action— leaving its response wholly in the hands of its insurer—that left it unable to protect its rights.

Simply put, the Dealership has failed to present sufficient evidence that its neglect was excusable, and thus it has failed to establish reasonable doubt regarding its entitlement to relief from the default judgment. *See* ***Est. of Vanleer***, 2002 WL 32332191, at *3; *see also* ***Lay***, 609 S.W.2d at 527 (requiring the movant to explain why it "was justified in failing to avoid the mistake, inadvertence, surprise or neglect" that led to the delay). On this record, we cannot say that the trial court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining[,]" in determining that the Dealership's failure to respond to the Credit Union's complaint was willful. ***Henry***, 104 S.W.3d at 479. This finding of willfulness pretermits any need to consider the merits of the Dealership's defenses to the complaint or any prejudice to the Credit Union caused by the delay. *See* ***Discover Bank***, 363 S.W.3d at 494. Accordingly, the trial court did not abuse its discretion in denying the Dealership's motion to set aside the default judgment, and we affirm.

**B.**

The Dealership also requests that we address whether the allegations of fraud in the Credit Union's complaint were sufficiently particular. *See* Tenn. R. Civ. P. 9.02 ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). The Credit Union argues that the Dealership has waived any consideration of this issue by failing to make the argument in the trial court.[8] Indeed, it is well settled that issues may not be raised for the first time on appeal. *See, e.g.*, ***Chimneyhill Condo. Ass'n v. Chow***, No. W2020-00873-COA-R3-CV, 2021 WL 3047166, at *15 (Tenn. Ct. App. July 20, 2021) (citing ***Barnes v. Barnes***, 193 S.W.3d 495, 501 (Tenn. 2006) (in turn citing ***Simpson v. Frontier Cmty. Credit Union***, 810 S.W.2d 147, 153 (Tenn. 1991))). As this restriction is premised on the doctrine of waiver, the Credit Union, as the party asserting waiver, bears the burden of proof. *See* ***Fayne v. Vincent***, 301 S.W.3d 162, 171 (Tenn. 2009) (citations omitted).

The Credit Union first posits that the Dealership failed to file any written attack on the sufficiency of the complaint. To be sure, the Dealership did not raise the issue of particularity in an answer or in a Tennessee Rule of Civil Procedure 12.02(6)[9] motion for

---

[8] No argument that the sufficiency of the complaint cannot be waived was raised in the Dealership's reply brief.

[9] Tennessee Rule of Civil Procedure 12.02 provides in relevant part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion in writing: . . . (6) failure to state a claim upon which relief can be granted[.]

- 12 -

failure to state a claim upon which relief can be granted. *See **Harman v. Univ. of Tenn.**,* 353 S.W.3d 734, 736 (Tenn. 2011) (noting that a Rule 12.02(6) motion is a means of testing the sufficiency of a complaint).[10] And the Dealership makes only the barest mention of its defenses to the complaint in its original motion to set aside the default judgment. There, it argued only that it "has potential defenses based upon alleged fraudulent acts being unlawful and/or beyond the scope of employment, relieving [the Dealership] of vicarious liability" and "defenses based upon [the Credit Union's] failure to mitigate its damages and/or lack of due diligence in performing its duties under the [Agreement]." These bare assertions clearly do not raise the issue of particularity.

In its amended motion to set aside the default judgment, the Dealership presents three categories of defenses: (1) "Defenses Based in Contract"; (2) "Defenses of Negligence and/or Failure to Mitigate"; and (3) a "Defense to Allegations of Fraud." The totality of the Dealership's argument in relation to this last category is as follows:

> [The Credit Union] further alleges, merely on information and belief, that . . . a former employee of [the Dealership], [], fraudulently falsified the documents for the loan at issue in this dispute. [The Credit Union] then implies, without stating, that the termination of [the employee] and pending charges against him, were related to the loan at issue.
>
> [The Dealership] expressly denies that it has any knowledge or information to indicate that charges pending against [the employee] are in any way related to the facts relevant to this case. Further, [the Dealership] denies that [the employee] falsified any records related to the subject loan. Moreover, a representative of [the] Credit Union has advised that other dealerships, which presumably did not employ [the employee], have fallen prey to the same scheme. This is substantiated by [the Credit Union's]

---

[10] We note that Tennessee Rule of Appellate Procedure 13 states, in part, that "[a] defaulted defendant cannot raise on appeal the defense of failure to state a claim upon which relief can be granted[.]" Tenn. R. App. P. 13(f); *see also **Tennison Bros., Inc. v. Thomas**,* 556 S.W.3d 697, 715–16 (Tenn. Ct. App. 2017) (explaining that Rule 13 was amended to include subsection (f) in 2001). In ***Youree v. Recovery House of East Tennessee, LLC***, the Tennessee Supreme Court declined to address the implications of Rule 13(f) on its analysis because neither party cited the Rule in their appellate brief and the plaintiff "expressly declined to rely on" the Rule at oral argument. No. M2021-01504-SC-R11-CV, --- S.W.3d ---, 2025 WL 259057, at *6 n.8 (Tenn. Jan. 22, 2025) (considering whether the defendant could seek to vacate the default judgment by arguing that the complaint failed to plead the elements required to pierce the corporate veil). The court noted, however, that "nothing in this opinion precludes an argument in a future case that Rule 13(f) prohibits a defaulted defendant from challenging the sufficiency of the complaint's allegations on appeal." *Id.* at *6. Here, although the Credit Union does not affirmatively cite to Rule 13(f) in its appellate brief, it also has not expressly declined to rely on the Rule. As it is unclear what effect, if any, the ***Youree*** decision has on a court's duty "to apply the controlling law, . . . whether or not cited or relied upon by the parties[,]" ***Coffee v. Peterbilt of Nashville, Inc.***, 795 S.W.2d 656, 658 n.1 (Tenn. 1990), we therefore discuss the Credit Union's waiver argument in an abundance of caution.

Complaint, in which they assert that when they sought to repossess the vehicle purchased in this case, they discovered that several vehicles were being sought at the address by various other creditors.

The circumstances surrounding the purchase and efforts of [the Credit Union] should be developed further in discovery and determined at a hearing of this matter on the merits. Accordingly, the Default Judgment should be set aside.

(Citations to the record omitted). We find no merit in the Dealership's argument on appeal that these oblique references to the allegations in the complaint constitute an argument regarding the requirement of particularity. *See **Rawlings v. John Hancock Mut. Life Ins. Co.***, 78 S.W.3d 291, 300 (Tenn. Ct. App. 2001) (noting that while courts "should give the language of a pleading its fair and natural construction," they "must stop short of reading a claim into a pleading where none exists" (citations omitted)). We therefore agree that the Dealership failed to raise its particularity argument in its written motions. *See **Alexander v. Armentrout***, 24 S.W.3d 267, 272 (Tenn. 2000) (finding that an issue was "not properly preserved for appeal" where the defense was not addressed in the defendants' answers to either the complaint or amended complaint, at any time during the trial, in a jury instruction, or in their motions for new trial).

Still, when considering whether a party has waived an issue, courts must take care not to "exalt form over substance." ***Powell v. Cmty. Health Sys., Inc.***, 312 S.W.3d 496, 511 (Tenn. 2010). Thus, an issue not raised in writing will not be found to have been waived where it was instead properly raised orally. *See **State v. Smith***, 492 S.W.3d 224, 242 (Tenn. 2016) (rejecting form over substance argument that an issue was waived because it was raised orally rather than in a written motion).[11] As noted by the Credit Union, however, this liberality does not save the Dealership's argument.

The Dealership again discussed its defenses to the complaint at the hearing on its motion to set aside the default judgment. After arguing that the Credit Union was not entitled to much of the relief it was granted, counsel for the Dealership stated the following:

There are other defenses as well. Counsel pointed out, and I did not in my brief address the promissory estoppel. *I think if Your Honor grants this motion, there may be some other motions to follow regarding lack of specificity on the fraud allegations,* even though I did cover in the affidavit that they know nothing about any fraud and they deny that the individual, their employee [], was involved in any fraud. But also, as far as promissory estoppel, I don't think that that's really pled. It's stated that they're seeking

---

[11] Of course, some arguments must be made in writing or at particular junctures in the litigation, such as affirmative defenses. Those rules are not at issue in the specific context of this appeal.

promissory estoppel, but there's nothing to say this is what was promised -- outside of the contract, this is what was promised by the dealership, so it's just not there.

There are defenses to each and every one of the claims. They'll be further developed.

(Emphasis added). And later, in once more discussing the Credit Union's entitlement to recovery under the terms of the Agreement, the following exchange occurred:

The Court: But they did not just sue for breach of contract. They sued for fraud in another --
[Counsel]: Fraud. Absolutely You're absolutely right, Your Honor. And I can't say that if they were found -- if [the Dealership] or its respondents were found guilty of fraud, which we dispute, that [the Credit Union] could recover damages for the fraud. I'm not disputing that. I'm just saying under the contract, they are not entitled to that relief.

The Dealership looks to the emphasized language above as proof that it orally raised the issue of the sufficiency of the fraud allegations. But again, no actual argument regarding the particularity of the Credit Union's complaint can be read by giving counsel's statement "its fair and natural construction[.]" *Rawlings*, 78 S.W.3d at 300. While there is some indication that the Dealership might have concerns regarding the complaint's sufficiency, it is clear that such a defense "*may*" have been presented in "some other motions" only "*if*" the motion to set aside was granted. Such a conditional statement, lacking any mention of the alleged infirmities in the complaint, simply does not preserve the issue. *Contra* **Fahrner v. SW Mfg., Inc.**, 48 S.W.3d 141, 144 n.1 (Tenn. 2001) (finding an issue sufficiently raised, despite the approach to waiver in **Alexander**, 24 S.W.3d at 272, because even though the party did not specifically mention "equitable estoppel" before the lower courts, it "discussed *all* the relevant facts" of the defense).

Moreover, the Dealership presented substantive defenses to the Credit Union's fraud claim. This somewhat undercuts the Dealership's purported argument on appeal that "it is impossible to determine precisely what tort(s) [the Credit Union] is alleging against [the Dealership]" or "what [the Dealership] was being required to defend against in regard to supposed fraud." *Cf.* **Poster v. Andrews**, 182 Tenn. 671, 677, 189 S.W.2d 580, 582 (1943) ("The primary purpose of the requirement of specifications in a declaration is to put the defendant on notice of the matters and things with which he is charged in order that he may be prepared to defend against them."); **Keisling v. Keisling**, 92 S.W.3d 374, 377 (Tenn. 2002) ("One of the purposes of pleadings is to give notice of the issues to be tried so that the opposing party can adequately prepare for trial." (citing **McClellan v. Bd. of Regents of the State Univ.**, 921 S.W.2d 684, 688 (Tenn. 1996))).

From all of the above, we conclude that the Credit Union has met its burden to establish that the Dealership has waived any argument regarding the sufficiency of the complaint. *See Fayne*, 301 S.W.3d at 171. We therefore decline to address the issue for the first time on appeal.

## V. CONCLUSION

The judgment of the Shelby County Circuit Court is affirmed, and this matter is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellant, Collierville 385 Motors, LLC, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE