IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 2, 2025

## HAMILTON COUNTY v. TAX YEAR 2010 DELINQUENT TAXPAYERS

**Appeal from the Chancery Court for Hamilton County**
No. 11220-7679      Pamela A. Fleenor, Chancellor

_____

**No. E2024-01579-COA-R3-CV**

_____

Following lengthy proceedings arising out of a delinquent tax sale of real property and attempted redemptions by two parties, the chancery court concluded that the taxpayer properly redeemed her property. The court then awarded the tax sale purchaser interest on the amount he had tendered for the sale, to be paid in part by the redeeming taxpayer and in part by another party that had unsuccessfully attempted redemption. The purchaser appeals, arguing that the court should have awarded him greater interest. The party that unsuccessfully attempted redemption argues that the trial court improperly disbursed to the purchaser funds beyond those to which he was entitled. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the court, in which D. MICHAEL SWINEY and VALERIE L. SMITH, JJ., joined.

Carlton J. Ditto, Chattanooga, Tennessee, pro se.

Charles Walker, Nashville, Tennessee, for the appellee, REO Holdings, LLC, pro se successor in interest.[1]

W. Thomas Bible, Jr., Chattanooga, Tennessee, for the appellee, Cherilyn E. Bryant.

Harry R. Cash, Chattanooga, Tennessee, for the appellee, Chattanooga Neighborhood Enterprise, Inc.

---

[1] REO Holdings, LLC is a party in this litigation, and the record does not reflect any substitution of parties in this case. Mr. Walker submitted a brief for REO Holdings LLC in a status that he identified as "Pro Se" "Successor in Interest." For reasons discussed below, this briefing is not properly before this court; however, for purposes of the captioning of this case we have retained his description of the nature of his filing.

James Davey, Chattanooga, Tennessee, for the appellee, Hamilton County, Tennessee.[2]

## OPINION

### I.

On June 5, 2014, Carlton Ditto purchased real property at a delinquent tax sale for Hamilton County, Tennessee, for $11,000. On June 16, 2014, the chancery court issued a decree confirming the sale, thus vesting title of the property in Mr. Ditto subject to a statutory one-year right of redemption. *See* Tenn. Code Ann. §§ 67-5-2701(a) (2013) (defining "person entitled to redeem property" as "any person who owns a legal or equitable interest in the property sold at the tax sale and creditors of the taxpayer having a lien on the property"); -2702 (effective May 13, 2013, to June 30, 2014) (setting the procedure by which such persons could redeem the property). Redemptions were subsequently attempted by two parties.

REO Holdings, LLC, was the first to attempt redemption of the property. REO Holdings argued that it was entitled to redeem because it had "a lien on the property as a creditor of" Cherilyn Bryant, the taxpayer. REO Holdings had obtained the alleged lien on the property by taking assignment of a general sessions judgment against Ms. Bryant. The judgment had been initially obtained by a company called Advantage Windows, Inc., which had filed suit against Ms. Bryant in early 2015 and thereafter obtained the judgment against her for $1,953.47 plus interest at a rate of 5.25% and the cost of the suit. REO Holdings tendered to the clerk $4,520.96 in its attempt to redeem the property.

Mr. Ditto moved to deny the redemption, asserting two theories. Mr. Ditto primarily argued that REO Holdings's interest in the judgment against Ms. Bryant did not entitle the company to redeem the property. He asserted that the judgment had no force against the property at issue because the judgment did not exist until after the tax sale, when Ms. Bryant no longer retained ownership of the property. In the alternative, should the court find that the judgment entitled REO Holdings to a lien on the property, Mr. Ditto asserted that, as the tax sale purchaser, he should be permitted to extinguish the interest by paying off the lien. To that end, Mr. Ditto tendered a $2,300 check to the county clerk, which was "more than sufficient to pay the judgment amount . . . plus interest" for the relevant period. REO Holdings responded with assertions that it "ha[d] a valid legal or equitable interest in the property," that it was "entitled to redeem," and that any tender of funds to pay off the judgment in lieu of redemption was inappropriate.

---

[2] Neither Ms. Bryant, nor Chattanooga Neighborhood Enterprise, nor Hamilton County has filed a brief in this appeal.

On July 31, 2015, Chattanooga Neighborhood Enterprise, Inc. (CNE) moved to redeem the property — not for itself, but on behalf of and for the benefit of Ms. Bryant. CNE tendered a check payable to the county clerk in the amount of $4,673.10 to redeem the property. Separately, both REO Holdings and Hamilton County moved for denial of CNE's attempt to redeem the property on the basis the right to redeem had been lost by Ms. Bryant's failure to seek redemption within one year following the order of confirmation of the sale. Mr. Ditto also moved to deny CNE's attempt at redemption, though he noted that "the matter may not end [with analysis of the Tennessee statute setting the one-year redemption period] due to Ms. Bryant's Chapter 13 bankruptcy." Mr. Ditto acknowledged that Ms. Bryant had filed for bankruptcy on June 4, 2015, which was within the one-year period following the chancery court's entry of the order confirming sale of the property to him.

Ms. Bryant moved to stay the chancery court proceedings on the basis that facts pertaining to the matter were the same as those involved in her bankruptcy case and that the question of whether federal bankruptcy law permitted extension of Tennessee's one-year redemption period would be more properly decided by the bankruptcy court. Specifically, she argued that 11 United States Code section 108(b)[3] extended the redemption period such that CNE's attempt to redeem on her behalf was timely. In the adversarial proceeding in the bankruptcy court, Ms. Bryant named only Mr. Ditto and Hamilton County as defendants; REO Holdings apparently did not intervene. *See In re Bryant*, 548 B.R. 239, 240 (Bankr. E.D. Tenn. 2016).

By a memorandum order entered on April 5, 2016, the bankruptcy court determined "that § 108(b) of the Bankruptcy Code extends the time for the debtor in a chapter 13 case to redeem property from a tax sale" by 60 days after the order for relief.[4] *Id.* at 246.

---

[3] 11 United States Code section 108(b) provides:

Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of [the bankruptcy code] may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of –

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.

[4] The bankruptcy court applied this interpretation of 11 United States Code section 108(b) to "T.C.A. § 67-5-2701(a)(1)," a section of the applicable statute that did not exist until May 2015. *See In re Bryant*, 548 B.R. 239, 241 (Bankr. E.D. Tenn. 2016); Tenn. Code Ann. § 67-5-2701(a)(1) (effective May 20, 2015, to June 30, 2017); Tenn. Code Ann. § 67-5-2701(a) (2013) (statute in effect at time of delinquent tax sale and order confirming sale).

Additionally, the bankruptcy court found that there was "no genuine issue of fact regarding the payment having been made by CNE on behalf of [Ms. Bryant]." *Id.* at 242. Thus, Ms. Bryant "had the right to redeem the property from the tax sale through CNE as her agent since the redemption right had not expired at the time she commenced her chapter 13 case and since the redemption occurred within sixty days after that date." *Id.* at 246. Neither Mr. Ditto nor Hamilton County appealed the bankruptcy court's ruling.

The record reflects no further action in the chancery court until August 29, 2016, when the Chapter 11 Trustee for REO Holdings, which had by then also commenced its own bankruptcy case, filed a notice of removal to the bankruptcy court. According to the notice, REO Holdings asserted that its "claims concerning the Real Property . . . constitute[d] property of [its] bankruptcy estate." However, the record indicates that the bankruptcy court had confirmed REO Holdings's Chapter 11 plan of reorganization on April 12, 2016, prior to the notice of removal. While the adversarial proceeding was pending, REO Holdings's Post-Confirmation Disbursing Agent moved to close its bankruptcy case, indicating that she had fully administered the bankruptcy estate. She explained that the adversarial proceeding was the only remaining matter and that its result was not necessary to administer the bankruptcy case. The bankruptcy court had issued a final decree and closed REO Holdings's Chapter 11 case on May 15, 2019. It declined to exercise discretionary jurisdiction over the adversary proceeding following the closure of the case.

REO Holdings appealed the bankruptcy court's order declining to exercise jurisdiction over the matter to the federal district court, which affirmed the decision. *REO Holdings, LLC v. Ditto*, No. 119-CV-00206-DCLC-CHS, 2020 WL 13443398, at *6 (E.D. Tenn. Apr. 7, 2020). Despite the *Byrant* Court's prior holding regarding 11 United States Code section 108(b), REO Holdings had argued before the district court that "a chapter 13 debtor cannot use the extension provided by 11 U.S.C. § 108(b)" because the sixty-day extension provided by 11 United States Code section 108(b) was only available to the trustee, not the Chapter 13 debtor, and thus, "REO owns the property in fee[] simple absolute." Brief of Appellant Reo Holdings, LLC at *3, *20, *REO Holdings, LLC v. Ditto*, 2020 WL 3621007; *see REO Holdings, LLC*, 2020 WL 13443398, at *2 ("REO argued — as Ditto had done in the Bryant bankruptcy case — that 11 U.S.C. § 108(b) did not extend the time in which CNE could exercise on Bryant's behalf her statutory right of redemption."). Because REO Holdings had "asked the bankruptcy court (albeit a different Bankruptcy Judge) to revisit the same issue the other bankruptcy court had already decided," the district court concluded that the bankruptcy court had "properly refused to address the same issues that had been already litigated in the Bryant bankruptcy case." *REO Holdings, LLC*, 2020 WL 13443398, at *2, *6. The federal district court remanded the case back to the Tennessee chancery court. *Id.* at *6. REO Holdings then appealed the remand to the Sixth Circuit Court of Appeals, which concluded that the order of remand was not reviewable and dismissed REO Holdings's appeal for lack of subject matter jurisdiction. *In re REO Holdings, LLC*, 831 F. App'x 200, 202 (6th Cir. 2020).

With the case returned to Hamilton County Chancery Court, the chancery court held a status hearing on April 19, 2024, at which Ms. Bryant, Mr. Ditto, counsel for CNE, and counsel for Hamilton County were present. Neither a representative of nor counsel for REO Holdings appeared for the hearing. In light of the litigation in the bankruptcy court proceedings and conclusion thereof, the chancery court entered an order in which it "determine[d] that *In re Bryant* . . . is res judicata on the issue of redemption" and that "the redemption by CNE was valid." Therefore, the court concluded, Mr. Ditto was "entitled to a refund of his purchase price plus statutory interest," and the "only issue is what is the correct amount of interest owed due to the stay resulting from the two bankruptcies."

A subsequent hearing focused solely on the amount of interest due to Mr. Ditto pursuant to the redemption statutes. Again, counsel for REO Holdings did not attend, and REO Holdings failed to file in this matter. Following the hearing, the chancery court concluded that Ms. Bryant owed Mr. Ditto "interest of 1% a month from the date the tax sale purchaser [paid] the purchase price until the motion to redeem [was] filed," a period running from June 5, 2014, to July 31, 2015. It also determined that "Ms. Bryant is entitled to the benefit of the automatic stay from her bankruptcy proceeding," which she had initiated on June 4, 2015. Based on these conclusions, the court determined that "the $4,673.10 that CNE paid into the Court on July 31, 2015 [on Ms. Bryant's behalf] provided the full amount that Ms. Bryant owed to redeem," and Ms. Bryant did "not owe any additional interest."

Regarding REO Holdings, the chancery court concluded that "REO is responsible for the delay in disbursing to Mr. Ditto, the Tax Sale Purchaser, his purchase price plus statutory interest." It noted that, in REO Holdings's bankruptcy proceedings, the bankruptcy court had found "that REO [had been] aware of Ms. Bryant's bankruptcy but did not seek to intervene." Nevertheless, "REO did not accept [the *Bryant* Court's] decision." Thus, the chancery court found that "from April 5, 2016, (the date [the *Bryant* court] ruled that Ms. Bryant timely redeemed the Property) until December 15, 2020, (the date of the Sixth Circuit's Order) REO frivolously delayed the determination of the state law claims, including Mr. Ditto's claim for statutory interest." In other words, the chancery court concluded that nearly four years' worth of delay for Mr. Ditto was attributable to the frivolous litigation tactics of REO Holdings.

However, because REO Holdings had also filed for bankruptcy during this time, the court concluded that it, too, was "entitled to the benefit of the automatic stay in its bankruptcy from February 29, 2016, the date REO filed its petition, until April 26, 2019, the date the Bankruptcy Court for the Middle District of Tennessee closed REO's bankruptcy case." It further concluded that "Mr. Ditto [was] not entitled to additional interest on the purchase price after December 15, 2020," because he "sat on his rights" from that date and thus "should not benefit from his failure to prosecute his claim."

- 5 -

Given these circumstances, the chancery court awarded "statutory interest to be paid by REO to Mr. Ditto in the amount of $2,200.00 representing $110 a month on the $11,000 purchase price for the 20 month period of April 26, 2019 (the date REO's bankruptcy case closed) to December 15, 2020 (the date the Sixth Circuit denied REO's appeal)." Accordingly, the court ordered that the "$2,200 the Court has awarded to Mr. Ditto to be paid by REO will be deducted from REO's refund amount resulting in a net refund to REO of $2,320.96" out of the $4,520.96 REO Holdings had paid in its attempt to redeem.

REO Holdings, "by and through its successor, Charles Walker," moved to alter or amend the court's final judgment pursuant to Tennessee Rule of Civil Procedure 59.04. As a basis for the motion, REO Holdings asserted that both it and Mr. Walker were "not aware of any motion before this Court to return its Judgment payoff or disburse its redemption deposit funds." It asked the court to "[o]rder the return of the judgment payoff [tendered to the clerk by Mr. Ditto along with his objection to REO Holdings's attempted redemption] in the amount of $2,300 to REO" and to "[o]rder the return of the redemption amount paid by REO in the amount of $4,520.96 to REO."

After hearing from Mr. Walker and Mr. Ditto, the chancery court concluded that REO Holdings failed to meet its burden to justify alteration of the final order. Furthermore, it found that "REO is on the certificate of service of every Order and pleading entered in this case" and that "REO chose not to attend any hearing [following the remand from the federal courts] until this hearing on its Rule 59 motion." Thus, "REO had notice . . . . But REO sat on its rights and raised neither a claim nor a defense of the interest allocation."

Mr. Ditto appeals from the chancery court's final order, arguing that the chancery court erred in declining to award him additional interest under the redemption statutes. Alternatively, REO Holdings seeks to raise on appeal those issues that it first brought before the chancery court in its motion to alter or amend the judgment.

II.

Mr. Ditto is proceeding pro se in this appeal. Pro se litigants "are entitled to fair and equal treatment by the courts." *Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 551 (Tenn. Ct. App. 2015). Courts should be mindful that pro se litigants often lack legal training and may be unfamiliar with the justice system. *State v. Sprunger*, 458 S.W.3d 482, 491 (Tenn. 2015). Accordingly, courts should afford some degree of leeway in considering the briefing from a pro se litigant, *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003), and should consider the substance of the pro se litigant's filing. *Poursaied v. Tenn. Bd. of Nursing*, 643 S.W.3d 157, 165 (Tenn. Ct. App. 2021).

Pro se litigants may not, however, "shift the burden of litigating their case to the courts." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000). Additionally, "[i]t is not the role of the courts, trial or appellate, to research or construct a

litigant's case or arguments for him or her." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). In considering appeals from pro se litigants, the court cannot write the litigants' briefs for them, create arguments, or "dig through the record in an attempt to discover arguments or issues that [they] may have made had they been represented by counsel." *Murray v. Miracle*, 457 S.W.3d 399, 402 (Tenn. Ct. App. 2014). It is imperative that courts remain "mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

## III.

Mr. Ditto contends that the trial court erred in failing to award him additional statutory interest for two periods of time: (1) from July 31, 2015 through April 26, 2019, and (2) from December 15, 2020 "until at least August 29, 2022 or longer."

"A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness." *Lovett v. Cole*, 584 S.W.3d 840, 858 (Tenn. Ct. App. 2019). In analyzing the amount of interest due to a tax sale purchaser following the taxpayer's redemption, we apply "the version of the statute[s] in effect at the time the trial court entered the decree confirming the sale," regardless of whether the "section[s] ha[ve] since been amended." *Rutherford Cnty. v. Delinq. Taxpayers of Rutherford Cnty.*, No. M2016-01254-COA-R3-CV, 2017 WL 5495401, at *1 n.2 (Tenn. Ct. App. Nov. 15, 2017); *see Delinq. Taxpayers as Shown on the 2011 Real Prop. Tax Recs. of the Metro. Gov't of Nashville & Davidson Cnty. v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2015-02450-COA-R3-CV, 2018 WL 3530842, at *3 (Tenn. Ct. App. July 23, 2018) ("The law in effect at the time of the tax sale governs the entire proceedings in this case."); *Sheafer v. Mitchell*, 71 S.W. 86, 94 (Tenn. 1902) ("A tax sale must be tested by the tax law in existence at the time of the sale, and, if the deed executed under such sale was valid under the law then in existence, the deed could not be affected by any subsequent legislation."). This is because "[t]he right of redemption and the procedure by which it is exercised are created by statute and originate on the date of the tax sale." *Metro. Gov't of Nashville & Davidson Cnty. ex rel. State v. Delinq. Taxpayers as Shown on 2011 Real Prop. Tax Recs. of the Metro. Gov't of Nashville & Davidson Cnty.*, No. M2018-00357-COA-R3-CV, 2019 WL 3322552, at *3 (Tenn. Ct. App. July 24, 2019) (quoting *Delinquent Taxpayers as Shown on 2011 Real Prop. Tax Records of Metro. Gov't of Nashville & Davidson Cnty.*, 2018 WL 3530842, at *3); *In re Minter*, 314 B.R. 164, 168 (Bankr. W.D. Tenn. 2004) (citing *Tennessee Marble & Brick Co. v. Young*, 163 S.W.2d 71, 74 (Tenn. 1942)) (explaining that a tax sale is final when a decree of confirmation is issued).

Tennessee's statutory scheme governing redemption has been changed multiple times since the sale of the property to Mr. Ditto in June 2014. Notably, the Tennessee General Assembly significantly revised the entire scheme just a few weeks after the tax sale and before the attempted redemptions in this case. *See* 2014 Tenn. Pub. Acts Ch. 883,

§ 17, eff. July 1, 2014 (amending Title 67 of the Tennessee Code "by deleting sections 67-5-2701 through 67-5-2706 and substituting instead the following new section . . .," a more comprehensive Tennessee Code Annotated section 67-5-2701); 2014 Tenn. Pub. Acts Ch. 883, § 20 ("This act shall take effect on July 1, 2014 . . . ."). The trial court here applied, and Mr. Ditto argues that this court should apply, Tennessee Code Annotated section 67-5-2701(b)(1) to determine the amount of interest due to him. However, this statute did not include a subsection (b)(1) until, at the earliest, July 1, 2017. *See* 2017 Tenn. Pub. Acts Ch. 299, § 16 ("Section 67-5-2701(b), is amended by designating the existing language as subdivision (b)(1) and adding the following new subdivisions . . ."); Tenn. Code Ann. § 67-5-2701(b)(1) (effective July 1, 2017, to April 18, 2018).

Because the decree confirming the sale of the property to Mr. Ditto was entered on June 16, 2014, we must apply the version of the statutory scheme in effect on that date, which occurred prior to the aforementioned significant statutory changes. *See* Tenn. Code Ann. § 67-5-2701, *et seq.* (2013). At that time, Tennessee Code Annotated section 67-5-2703 listed the costs a redeeming party was required to submit in order to redeem. Section 2703 provided:

> In order to redeem property that has been sold, any person entitled to redeem the property shall pay to the clerk of the court who sold the property the amount paid for the delinquent taxes, interest and penalties, court costs and any court ordered charges, *and interest at the rate of ten percent (10%) per annum computed from the date of the sale on the entire purchase price paid at the tax sale.*

Tenn. Code Ann. § 67-5-2703 (2013), *repealed by* 2014 Tenn. Pub. Ch. 883, § 17, eff. July 1, 2014 (emphasis added). This court has previously acknowledged that, "[w]hile this provides that the interest begins to accrue on the date of the tax sale, it does not tell us the date through which it accrues." *Metro. Gov't of Nashville & Davidson Cnty.*, 2018 WL 3532079, at *3.

In prior cases, this court has consistently looked to other parts of the statutory scheme for guidance in determining the date through which interest may accrue. In doing so, this court has acknowledged that "the courts, as a matter of general policy, construe the statutes governing the sale of property for delinquent taxes, and specifically the statutes providing the right of redemption, liberally in favor of the redeeming party." *State v. Delinq. Taxpayers*, No. M2004-00951-COA-R3-CV, 2006 WL 3147060, at *6 (Tenn. Ct. App. Nov. 2, 2006) (collecting cases); *Metro. Gov't of Nashville & Davidson Cnty.*, 2018 WL 3532079, at *3. Additionally, this court has recognized that "[i]n Tennessee, property owners who redeem real property that was sold to pay delinquent taxes are required to pay only those costs specified by statute." *Rutherford Cnty.*, 2017 WL 5495401, at *4 (citing *Delinquent Taxpayers*, 2006 WL 3147060, at *6).

Tennessee Code Annotated section 67-5-2702 provided guidance for determining the date through which interest may occur. The version of this section that was in effect on the date of the tax sale to Mr. Ditto stated:

> Persons entitled to redeem property may do so by paying the moneys to the clerk as required by § 67-5-2703 within one (1) year from the date of entry of the order of confirmation of sale, as evidenced by the records in the office of the clerk of the court responsible for the sale.

Tenn. Code Ann. § 67-5-2702(a) (effective May 13, 2013, to June 30, 2014).

Construing Tennessee Code Annotated § 67-5-2703 and Tenn. Code Ann. § 67-5-2702 together, this court held that, "[b]ecause the redeeming party must pay its funds, including interest on the amount paid at the tax sale within one year, there is no authority in the statute for a longer period of interest." *Metro. Gov't of Nashville & Davidson Cnty. ex rel. State v. Delinquent Taxpayers as Shown on 2011 Real Prop. Tax Records of Metro. Gov't of Nashville & Davidson Cnty.*, 2019 WL 3322552, at *5 (quoting *Metro. Gov't of Nashville & Davidson Cnty.*, 2018 WL 3532079, at *3). Moreover, this court explained, regarding this prior version of the statute, that if "the legislature intended the redeeming party to pay interest while the redemption was proceeding, it could have expressly done so." *Metro. Gov't of Nashville & Davidson Cnty. v. Delinq. Taxpayers as Shown on 2011 Real Prop. Tax Rec.*, 2018 WL 3532079, at *3.

A related provision in effect at the time of the tax sale to Mr. Ditto, Tennessee Code Annotated section 67-5-2704, provided the process by which the court was to disburse funds to the tax sale purchaser following the redeeming party's tender of payment. Tenn. Code Ann. § 67-5-2704(a), *repealed by* 2014 Tenn. Pub. Acts Ch. 883, § 17, eff. July 1, 2014. This section required the clerk of court to provide notice of the tender to the tax sale purchaser, who would then have 30 days from the date of the tender "to file a motion requesting additional amounts to be paid to compensate the purchaser for any other lawful charges or moneys, including property taxes due or delinquent on the property, expended to preserve the value of the property or to otherwise protest the redemption." *Id.* Following the payment of any additional sums awarded, the section directed the court to

> order that the redemption has been properly made, and the clerk shall disburse the purchase price with interest at a rate of ten percent (10%) per annum computed from the date of the tax sale to the purchaser. If the court finds that no additional sums are owing in order to redeem, or upon expiration of the thirty-day period for the purchaser to file a motion to protest the redemption or to request additional moneys, the court shall order that redemption has been properly made, and the clerk shall disburse the purchase price, plus interest at a rate of ten percent (10%) per annum computed from the date of the sale, and any other moneys so ordered by the court to the

purchaser.

*Id.* This court has previously concluded that this section, too, "does not grant a trial court the right to increase the period during which interest may accrue on the property." *Metro. Gov't of Nashville & Davidson Cnty. ex rel. State v. Delinq. Taxpayers as Shown on 2011 Real Prop. Tax Recs. of Metro. Gov't of Nashville & Davidson Cnty.*, 2019 WL 3322552, at *5.

Here, the trial court entered the order confirming the tax sale of the property on June 16, 2014. CNE filed for redemption on behalf of Ms. Bryant and tendered the amount due on July 31, 2015. Whatever the merits of the redemption in this case, the bankruptcy court concluded that it was proper, and the trial court determined that the bankruptcy was res judicata in this case. The trial court awarded Mr. Ditto interest, paid by Ms. Bryant, "from the date the tax sale purchaser [paid] the purchase price until the motion to redeem [was] filed." In prior decisions, this court has consistently concluded that the statutory scheme that was in effect at the time of the tax sale did not provide any authority for payment of interest beyond this time period. Accordingly, under the prior version of this statutory scheme, which was in effect at the time of the tax sale, Mr. Ditto is owed no additional statutory interest past the date CNE paid to redeem the property on Ms. Bryant's behalf. And, as noted above, it is that version of the statute that applies in the present case. Accordingly, we cannot conclude that the trial court erred by failing to award additional statutory interest payments to Mr. Ditto.

IV.

The briefing submitted on behalf of REO Holdings asserts that the trial court erred both in awarding to Mr. Ditto $2,200 of the funds that REO Holdings had deposited with the court in its attempt to redeem Ms. Bryant's property and in returning to Mr. Ditto the $2,300 he had tendered to the court in connection with his objection to REO Holdings's attempt to redeem. The record reflects that REO Holdings raised these two issues for the first time in its Rule 59.04 motion to alter or amend the trial court's final judgment.

As an initial matter, the briefing submitted on behalf of REO Holdings was submitted by Charles Walker. He characterizes the briefing as having been submitted pro se as successor in interest to REO Holdings. There has been no substitution of parties in this case. Under Tennessee law, there is a "presumption that a corporation is a distinct legal entity, wholly separate and apart from its shareholders, officers, directors, or affiliate corporations." *Collier v. Greenbrier Devs., LLC*, 358 S.W.3d 195, 200 (Tenn. Ct. App. 2009) (quoting *Boles v. National Dev. Co., Inc.*, 175 S.W.3d 226, 244 (Tenn. Ct. App. 2005)). Accordingly, "a limited liability company has an existence separate from its members and managers . . . and may only appear in court through counsel." *Id.* at 200 (quoting 83 Am. Jur. 2d Limited Liability Companies § 1). The Tennessee Supreme Court has made plain that "a corporation cannot act *pro se* in a court proceeding nor can it be

- 10 -

represented by an officer or other non-lawyer agent." *Old Hickory Eng'g & Mach. Co. v. Henry*, 937 S.W.2d 782, 786 (Tenn. 1996). Pro se filings on appeal in such circumstances do not constitute valid participation in the appellate proceedings, and arguments raised under such circumstances are not properly raised before the court. *Faubion v. Sigerseth*, No. E2018-01556-COA-R3-CV, 2019 WL 2404818, at *1 (Tenn. Ct. App. June 7, 2019). Courts have consistently rejected assertions that dissolution of a corporation, assuming for purposes of argument that that is what occurred in this case, empowers unlicensed pro se actors to represent a dissolved corporation in court proceedings. *See*, *e.g.*, *Talasila, Inc. v. United States*, 240 F.3d 1064, 1066 (Fed. Cir. 2001); *Kim v. Kini LIC Corp.*, 806 F. Supp. 3d 277, 294 (E.D.N.Y. 2025); 19 Am. Jur. 2d Corporations § 1856 (2026). In other words, the arguments advanced in the brief submitted by Mr. Walker are not properly before the court.

Independently, these arguments are also not properly before this court under Rule 59.04 of Tennessee Rules of Civil Procedure. The purpose of a motion to alter or amend a judgment pursuant to Tennessee Rule of Civil Procedure 59.04 is to provide the trial court with an opportunity to correct errors before the judgment becomes final. *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). Tennessee courts have determined that a litigant may base a Rule 59.04 motion on one of four grounds: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in law; and (4) other manifest injustice. *Id.*; *Relliford v. Burks*, No. W2022-00997-COA-R3-CV, 2025 WL 26106, at *4 (Tenn. Ct. App. Jan. 3, 2025). Alternatively, post-judgment motions "should not be used to raise or present new, previously untried or unasserted theories or legal arguments." *In re M.L.D.*, 182 S.W.3d at 895; *see Vaccarella v. Vaccarella*, 49 S.W.3d 307, 312 (Tenn. Ct. App. 2001) (stating that Rule 59.04 motions should not "be granted if they are simply seeking to relitigate matters that have already been adjudicated" (citation omitted)). Based on this principle, when a party raises an argument for the first time in a motion to alter or amend, Tennessee courts typically conclude that the argument has been waived. *City of Memphis v. Pritchard*, No. W2019-01557-COA-R3-CV, 2020 WL 4354911, at *3 (Tenn. Ct. App. July 29, 2020); *see*, *e.g.*, *Robinson v. City of Clarksville*, 673 S.W.3d 556, 567 (Tenn. Ct. App. 2023) (concluding that an argument that "advanced a new legal theory" in a post-judgment motion was waived); *Cent. Parking Sys. of Tennessee, Inc. v. Nashville Downtown Platinum, LLC*, No. M2010-01990-COA-R3-CV, 2011 WL 1344633, at *5 (Tenn. Ct. App. Apr. 7, 2011) (determining that the appellant's challenge on appeal had been waived when the "only basis for relief on appeal . . . was first raised in a motion to alter or amend and [was] not properly raised before the trial court"); *Baker-Brunkhorst v. Brunkhorst*, No. W2020-00154-COA-R3-CV, 2021 WL 673208, at *4 n.9 (Tenn. Ct. App. Feb. 22, 2021) (concluding an issue was waived "because it was raised for the first time in Administrator's Rule 59.04 motion to alter or amend the judgment").

Here, REO Holdings improperly used its Rule 59.04 motion to present new arguments after failing to participate — for years — in the chancery court proceedings. The record reflects that REO Holdings filed nothing in the chancery court between August

- 11 -

2016, when it removed the case to the federal bankruptcy court, and the filing of its Rule 59.04 motion in October 2024 — despite the entry of the Sixth Circuit Court of Appeals' December 2020 opinion declining to review the remand of the case to the chancery court. *See In re REO Holdings, LLC*, 831 F. App'x at 202. REO Holdings did not participate in the April 2024 status hearing on the matter. It did not respond to the other parties' chancery court filings thereafter. Nor did it participate in the final hearing on the issue of statutory interest. Despite the assertion from REO Holdings that it and its successor in interest lacked notice that the chancery court would decide these issues, the trial court found that "all of the parties . . . received notice of the remand" from the federal courts, that "REO is on the certificate of service of every Order and pleading entered in this case," and that "REO chose not to attend any hearing [following the remand from the federal courts] until this hearing on its Rule 59 motion." Thus, the court concluded that "REO had notice . . . . But REO sat on its rights and raised neither a claim nor a defense of the interest allocation." The evidence does not preponderate otherwise.

Accordingly, we decline to consider the contentions in Mr. Walker's brief, which are, upon more than one basis, waived.

V.

For the aforementioned reasons, we affirm the judgment of the trial court. Costs of this appeal are taxed equally between the appellant, Carlton J. Ditto, and the appellee, REO Holdings, LLC, for which execution may issue if necessary. The case is remanded for further proceedings consistent with this opinion.

s/  Jeffrey Usman
JEFFREY USMAN, JUDGE